741 So.2d 375 (1999)
Wesley T. ROEBUCK and Hortense I. Roebuck, Appellants,
v.
Donny W. MASSEY, Executor of Estate of Welton Anthony, Deceased; Bobbie Anthony, Joyce Anthony Bottcher and Norma Anthony Massey, Appellees.
No. 97-CA-00002COA.
Court of Appeals of Mississippi.
June 22, 1999.
*377 Wesley T. Roebuck, pro se, Appellant.
J. Niles McNeel, Louisville, Attorney for Appellees.
BEFORE KING, P.J., BRIDGES AND COLEMAN, JJ.
COLEMAN, J., for the Court:
¶ 1. The appeal of this case emanates from a judgment rendered by the Chancery Court of Kemper County which confirmed appellees' title to a strip of land containing approximately four acres which lay north of a fence which Wesley T. Roebuck completed in 1994 and south of an old fence in existence since at least the year 1928. Noteworthy is the chancellor's observation found in his formal opinion that this was "an unusual landline suit [because] no survey was introduced to identify the true location of the line between the [land] owned by the Anthonys [appellees] and the [land] by the Roebucks [appellants]...." The appellant, Wesley T. Roebuck, represented himself throughout the entire course of this litigation.[1] In their appeal, the Roebucks present six issues for this Court's analysis and resolution. We quote their six issues verbatim from the statement of issues which the Roebucks included in their brief as required by Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure:
1. The Chancery Court's decision that Welton Anthony, deceased, and his heirs had acquired title to the land in litigation by adverse possession was against the overwhelming weight of the evidence.
2. The Chancery Court abused its discretion in excluding relevant evidence and this was prejudicial to and affected substantial rights of Wesley T. Roebuck and Hortense I. Roebuck.
3. The Chancery Court erred in allowing the case to be tried as an Adverse Possession Case when the Bill of Complaint was brought as a Trespassing Case.
4. The Chancery Court erred in dismissing and failing to consider a court ordered survey by Kemp, Springer and Assoc., where the Roebucks had gained fee simple title to a part of the land in this case.
5. The Chancery Court erred when it allowed Wesley Roebuck to be called as an adverse witness in violation of discovery without prior knowledge.
6. The Chancery Court erred when it would not let the Defendant challenge *378 the credibility of Bobbie Anthony. This violates (MRE, Rule 608).
From our analysis and resolution of the Roebucks' six issues we find no error by the chancellor, and thus we affirm the judgment from which the Roebucks have appealed.

I. FACTS
¶ 2. Recitation of these facts is consistent with the opinion and judgment rendered by the chancellor as the fact-finder. On October 31, 1953, W.H. Anthony and Bertha Anthony, husband and wife, conveyed the northeast quarter (NE¼) of the southwest quarter (SW¼) of Section 15, township 11, range 14 east, to Welton Anthony. On February 28, 1962, Bertha Anthony conveyed to Welton Anthony her "undivided 8/10ths interest in and to the northwest quarter (NW¼) of the southeast quarter (SE¼) of Section 15, township 11, range 14 east." On that same date, the Kemper County Chancery Clerk, acting as the special commissioner for the Kemper County Chancery Court, conveyed the remaining undivided 1/10th interests of both Lathan Anthony and Narvell Anthony a total of an undivided 2/10's interest in and to the same northwest quarter (NW¼) of the southeast quarter (SE¼) of Section 15, township 11, range 14 east, to Welton Anthony. W.A. Anthony, the father of Welton Anthony, had died intestate on July 19, 1960.
¶ 3. On August 7, 1974, Carlous B. Denton and Carolyn S. Denton, husband and wife, conveyed to Wesley T. Roebuck and Hortense I. Roebuck, husband and wife, "as joint tenants ... with full rights of survivorship" a tract of land which contained 133.34 acres in section 15, township 11 north, range 14 east. Included in these 133.34 acres was the following described smaller tract:
The southwest quarter (SW¼) of the northeast quarter (NE¼); and the southeast quarter (SE¼) of the northwest quarter (NW¼); LESS three (3) acres in the southwest corner of the southeast quarter (SE¼) of the northwest quarter (NW¼) of section 15, township 11 north, range 14 east, described by metes and bounds as follows: Beginning at the southwest quarter of the SE¼ of the NW¼ of section 15 aforesaid, run thence north 630 feet, thence run east 210 feet, thence run south 630 feet, thence run west 210 feet to the point of beginning of the three acres herein EXCEPTED.
In summary, the Roebucks' land was north of the Anthonys' land. Thus, the disputed landline marked the southern boundary of the Roebucks' land and the northern boundary of the Anthonys' land.
¶ 4. For many years before Welton Anthony bought the two forty-acre parcels of land from his parents and siblings in the early 1950's, a barbed wire fence meandered along the south side of the Roebucks' land. Burl Haggard, who once owned Roebucks' eighty-acre tract, built this fence before 1928 according to Johnny B. Clark, who had married Burl Haggard's daughter in 1928. The fundamental issue for the chancellor's resolution was whether the Anthonys and their predecessors in title had acquired title by adverse possession to all of the land located on the south side of this fence regardless of where the original government survey line was located between the Roebucks' and the Anthonys' respective eighty-acre tracts.

II. Litigation
¶ 5. Welton Anthony owned the northeast quarter (NE¼) of the southwest quarter (SW¼) and the northwest quarter (NW¼) of the southeast quarter (SE¼) when he died testate on September 25, 1994. In his will, Welton Anthony devised the north one-half of these two contiguous forty-acre parcels to his daughter, Joyce Anthony Bottcher, who had been a resident of Gillman City, Missouri since 1982. Welton Anthony devised the south one-half of these same two contiguous forty-acre parcels to his other daughter, Norma Anthony Massey, a resident of Neshoba County. Norma Anthony Massey's *379 devise was subject to a life estate in and to a one-acre parcel of land located in the southwest corner of her parcel of land which Welton Anthony had devised to his wife, Bobbie Anthony. Welton Anthony had appointed Donny W. Massey, the husband of Norma Anthony Massey, to serve as the executor of his last will and testament.
¶ 6. The genesis of this litigation was an order of the Kemper County Chancery Court obtained by Donny W. Massey as the executor of Welton Anthony's will which authorized Massey as executor "to enter a land line suit ... to seek to recover land owned by the decedent [Welton Anthony] at the time of his death and to clear the title to lands in the estate...." Pursuant to the authority which this order vested in him, the executor, Donny W. Massey, filed a "complaint to quiet and confirm title and remove cloud" against Wesley T. Roebuck. All three beneficiaries of Welton Anthony's will, Bobbie Anthony, his widow, Joyce Anthony Bottcher, his daughter, and Norma Anthony Massey, joined the executor as parties plaintiff in the complaint. Wesley T. Roebuck as sole defendant filed an "answer, defense and crossbill of complaint" in response to the Anthonys' complaint. Wesley T. Roebuck has represented himself from the beginning of this litigation.
¶ 7. The record contains an unusual amount of pre-trial maneuvering between Roebuck and the Anthonys' initial counsel of record, the ultimate result of which was the chancery court's entry of an order which disqualified the Anthonys' initial counsel because of a conflict of interest between the Roebucks and the Anthonys. The Anthonys employed new counsel, who filed a motion for leave to file an amended complaint to add Hortense I. Roebuck as a defendant and to request that the chancellor award the Anthonys their attorney fees. The chancery court entered an order authorizing the Anthonys to file their amended complaint. Until this case was tried, Wesley Roebuck persisted in his effort to obtain a default judgment against the Anthonys because their initial counsel had failed to respond to Roebuck's original "answer, defense and crossbill of complaint."
¶ 8. Before the trial ended, the chancellor inspected the disputed premises. In his opinion issued several days after the trial's conclusion, the chancellor observed that "[t]his is an unusual landline suit in that no survey was introduced to identify the true location of the line between [the land] owned by the Anthonys and the [land] owned by ... the Roebucks." He then reviewed the evidence, from which he "determined that the Anthonys had acquired the property [south of the old meandering fence] by adverse possession by 1974 when Mr. Roebuck acquired his property [located north of the Anthonys' land]...." The chancellor reasoned that his next task was to "address Mr. Roebuck's contention that [Mr. Roebuck] ha[d] repossessed [the disputed area south of the old meandering fence] by adverse possession since 1974."
¶ 9. The chancellor began his consideration of whether the Roebucks had established their title by their adverse possession beginning with the purchase of their land in 1974 by summarizing the Roebucks' evidence as follows:
In support of this contention [that the Roebucks had repossessed the disputed land by adverse possession since 1974 the Roebucks] say[] [Mr. Roebuck] had kept the line painted south of the old fence since 1974, that there have been hack marks and some metal pins on the line since 1974, and that [Mr. Roebuck] occasionally hunted on the area between the old fence and the painted line where he built the new fence in 1994. He further contends that he paid taxes on the property in question.
Next, the chancellor evaluated this evidence as follows. About the Roebucks' payment of the taxes on land between the old, meandering fence and the fence which Mr. Roebuck completed in 1994, the chancellor *380 found that because "there [was] no survey in the record," he did "not know whether the old fence is on the line, or in the north half of Section 15." He reasoned that if the questioned area was "not in the north half of the Section, Mr. Roebuck did not pay the taxes." Neither did Mr. Roebuck's completion of the new fence, which ran south of the old, meandering fence, in 1994 constitute adverse possession because the new fence had been in place for less than three years when this case was tried.
¶ 10. Neither did the chancellor "think that occasionally hunting on the strip with no knowledge of this by the Anthonys[] would support [the Roebucks'] claim for adverse possession." The chancellor continued:
Thus, the only evidence that [Mr. Roebuck] really offers to support his claim [of adverse possession of the strip of land between the old, meandering fence on the north and the new fence on the south] is the hack marks, the pipes, and the fact that he painted the line 3 times since 1974. These acts may be some evidence of a claim to [the land] by Mr. Roebuck, but in contrast he only grazed cows north of the old fence, he cut his timber, but only north of the old fence, he at times repaired the old fence which the Anthonys claimed to be the line. The evidence of the old fields on his property clearly stops at the old fence.
¶ 11. Citing Roy v. Kayser, 501 So.2d 1110 (Miss.1987), and basing his conclusion on Mr. Roebuck's "virtual non-use of the property south of the old fence while [Mr. Roebuck] fully used his property north of the fence and the iron stakes," the chancellor evaluated "the painting of the lines" as "creat[ing] a scrambling possession from 1974[] to 1994, but not the exclusive possession required if Mr. Roebuck was to repossess the property by adverse possession." Based upon his finding that the Anthonys had "acquired the land in controversy south of the old fence by adverse possession," the chancellor ordered the Roebucks "to remove the fence that he built in 1994 within 90 days...."
¶ 12. Pursuant to his opinion which this Court has endeavored to summarize, the chancellor entered a judgment which adjudicated that the Anthonys had "acquired the land ... south of the old fence and fence line by adverse possession [and] that the old fence ... forms the boundary between the [Anthonys] and [the Roebucks] except for a three acre tract owned by a third party that bounds the [Anthonys] on the north at Highway 495." The judgment further ordered the Roebucks "to remove the fence they erected in 1994 within 90 days." The Roebucks filed their motion "to set aside the verdict and grant defendants a new trial," in which Mr. Roebuck set forth the various issues which he presents in this appeal for this Court's analysis and resolution. The chancellor denied the motion, and the Roebucks perfected their appeal from the judgment.

III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES

A. Mr. Roebuck's pro se representation
¶ 13. Earlier this Court observed that Mr. Roebuck had represented himself from the beginning of the Anthonys' litigation against him in the Chancery Court of Kemper County. While it has no reason to doubt that Mr. Roebuck would think differently, this Court believes it appropriate to establish that the Roebucks are entitled to no special consideration as pro se litigants. The Mississippi Supreme Court has opined: "Pro se parties should be held to the same rules of procedure and substantive law as represented parties." Dethlefs v. Beau Maison Development Corp., 511 So.2d 112, 118 (Miss.1987) (quoted with approval in Ivy v. Merchant, 666 So.2d 445, 449 (Miss.1995)).
¶ 14. As a corollary to the Roebucks' pro se representation in this case, this Court adds: "It is the duty of the appellant to overcome the presumption of *381 the correctness of the trial court's judgment by demonstrating some reversible error." Edlin v. State, 533 So.2d 403, 409-10 (Miss.1988) (citation omitted). See Touchstone v. Touchstone, 682 So.2d 374, 380 (Miss.1996) (holding that "[w]e do not consider unsupported assignments of error"). See also Jackson v. State, 684 So.2d 1213, 1223 (Miss.1996) (holding issue barred for numerous reasons including failure to provide argument for assertion).

B. The Roebucks' Third Issue
¶ 15. This Court elects to review the Roebucks' six issues chronologically with regard to the trial rather than in the order of their being listed in the Roebucks' statement of the issues which Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure required. The Roebucks' third issue is that the chancellor "erred in allowing the case to be tried as an [a]dverse [p]ossession [c]ase when the [b]ill of [c]omplaint was brought as a [t]respassing [c]ase." However, the Roebucks do not cite any case law or other precedent to support their position on their third issue; thus, we are not obliged to review it further.
¶ 16. Nevertheless, this Court has reviewed the amended bill of complaint which the Anthonys' second counsel filed by leave of the trial court and has found that the Anthonys charged that they and their predecessors in title "had the open, notorious, continuous, hostile, exclusive and uninterrupted adverse possession of the aforesaid property of the decedent [Welton Anthony] up to the old wire line fence aforesaid, claiming same against all of the world for more than fifty (50) years, and they own same by adverse possession and by record title...." Later in their prayer with which they concluded their amended bill of complaint, the Anthonys asked:
That this Honorable Court will find and adjudicate the old wire fence to be the boundary line between the land of Plaintiffs and Defendants, being the north boundary line of the Plaintiffs' land and that Defendants' claim to that portion of the property lying north of the new wire fence erected by Defendants and south of the old wire fence boundary line, which has cast a cloud on Plaintiffs property, be canceled and held for naught, and that title to Plaintiffs' be quieted and confirmed against the Defendants, Wesley T. Roebuck and Hortense I. Roebuck....
We agree with the Anthonys' statement contained in their brief that "[a]lthough the Roebucks represented themselves, even a lay-person was on notice to the clear meaning of the language in the pleadings." Thus, this Court resolves the Roebucks' third issue adversely to them.

C. The Roebucks' Fifth Issue
¶ 17. The Roebucks' fifth issue is that the chancellor erred when he allowed counsel for the Anthonys to call Wesley T. Roebuck as an adverse witness "in violation of discovery without prior knowledge." The Roebucks argue that the chancellor's ruling that the Anthonys' counsel could call Wesley T. Roebuck as an adverse witness "was an error of discretion because the purpose of discovery guidelines is to avoid ambush or unfair surprise at a trial." The Anthonys counter that "[Mr.] Roebuck cannot complain that he would be unaware of what he himself would say." The Anthonys assert that "[t]his was not a question of springing a surprise witness who was unknown to the other side."
¶ 18. After the Anthonys' first witness, Ms. Lorene Whittle, had finished her testimony as the owner since 1946 of an eighty-acre tract contiguous to the eastern boundaries of both the Roebucks' and the Anthonys' respective tracts of land, the Anthonys' counsel called Mr. Roebuck as their second witness. Before Mr. Roebuck was sworn to testify, he objected to being called as the Anthonys' witness because he "was not, according to discovery, placed upon the [Anthonys'] witness list that he [Mr. Roebuck] was going" to be called. However, Mr. Roebuck added that the Anthonys *382 would "have time at a later date to cross-examine [him] when [he took] the stand for [him]self." The chancellor opined that he did not think that the Anthonys "had to identify" Mr. Roebuck because "clearly" Mr. Anthony was "going to be available for testimony." The chancellor then ruled that the Anthonys "ha[ve] the right to put you on now, because [they are] certainly going to have the right to cross-examine you during your own case."
¶ 19. Once again, the Roebucks fail to cite any authority for their position on this their fifth issue, and they offer no argument other than what we have already related. The rule in Mississippi is that "[w]hen a party defendant is present in the courtroom, the plaintiff may call him as an adverse witness at any time during the presentation of his case." Commercial Credit Equip. Corp. v. Kilgore, 221 So.2d 363, 367 (Miss.1969). We agree with the Anthonys' assertion that "[Mr.] Roebuck cannot complain that he would be unaware of what he himself would say," especially since Mr. Roebuck acknowledged to the chancellor that the Anthonys would "have time at a later date to cross-examine [him] when [he took] the stand for [him]self." We affirm the chancellor's requiring Mr. Roebuck to testify when the Anthonys called him as an adverse witness pursuant to the rule stated in Kilgore.

D. The Roebucks' Sixth Issue
¶ 20. For their sixth issue, the Roebucks assert that the chancellor erred when he "would not let the defendant challenge the credibility of Bobbie Anthony." Their sole authority for their sixth issue is Mississippi Rule of Evidence 608.[2] The asserted error occurred with Mr. Roebuck's question to Mrs. Bobbie Anthony, the widow of Welton Anthony, with which he began his cross-examination of Mrs. Anthony. We quote from the record:
Q You, did you and Mr. Anthony fight like cats and dogs?
BY THE ANTHONYS' COUNSEL: Object to that, Your Honor, it is irrelevant.
BY MR. ROEBUCK: It is because I have the right to challenge the credibility of this witness, Your Honor.
BY THE COURT: How does that relate to her credibility?
BY MR. ROEBUCK: Because I think that she won't know anything because they didn't communicate.
BY THE COURT: I sustain the objection. She lived on the place and the main thing she has talked about is the use of cattle and she could have known that whether they communicated, or not.
¶ 21. In their brief, the Roebucks assert that Mrs. Anthony testified that she and her late husband, Welton Anthony, "agreed on everything." Then, the Roebucks explain that Mr. Roebuck's motive *383 in asking that question "was to establish that there was no communication between husband and wife." As before, the Roebucks cite no authority to establish that the chancellor erred when he sustained the Anthonys' counsel's objection to this question. The Anthonys' counsel counters that this question was "totally irrelevant to the issues and any credibility of Mrs. Anthony." Counsel further asserts without citation of authority that "[w]hile a party is given wide leeway in cross-examining another party, the questions still must have some relevancy."
¶ 22. Mississippi Rule of Evidence 611(b) defines the "scope of examination" as follows: "Cross-examination shall not be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." M.R.E. 611(b). The supreme court elaborated on the relationship between Rule 611(b) and "relevancy" in Ruffin v. State, 724 So.2d 942, 944 (Miss.App.1998):
However, cross-examination is not without its limits. `M.R.E. 611(b) allows wide-open cross-examination so long as the matter probed is relevant.' Zoerner v. State, 725 So.2d 811, 96-KA-00318-SCT (P 3) (Miss.1998) (citations omitted). M.R.E. 401 defines what is relevant evidence:
`Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
The chancellor sustained the objection to Mr. Roebuck's question about whether Bobbie and Welton Anthony fought "like cats and dogs" because "the main thing [Mrs. Anthony] has talked about is the use of cattle, and she could have known that whether they communicated or not." Implicit in the chancellor's reason for sustaining the objection to this question was his determination that the answer was irrelevant, which was, after all, the reason that the Anthonys' counsel gave for the objection.
¶ 23. The record of Mrs. Anthony's direct examination contains no testimony that "[Bobbie Anthony] and Welton [Anthony] agreed on everything," as the Roebucks assert in their brief. Moreover, the record does not contain any proffer of what answer Mr. Roebuck expected Mrs. Anthony to give to this question. "When testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal." Metcalf v. State, 629 So.2d 558, 567 (Miss. 1993) (citations omitted). Mr. Roebuck's failure to proffer for the record what answer he expected Mrs. Anthony to give to his first question on her cross-examination leaves nothing to contradict the chancellor's reason for sustaining the objection, i.e., irrelevancy. Thus, we resolve the Roebucks' sixth and final issue adversely to them and affirm the chancellor's sustaining the Anthonys' counsel's objection to whether the Anthonys fought "like cats and dogs."

E. The Roebucks' Fourth Issue
¶ 24. The Roebucks' fourth issue emanates from Mr. Roebuck's cross-examination of Donny W. Massey, the executor of the will of Welton Anthony, deceased, whom the Anthonys called as their last witness. We begin our review of their fourth issue by quoting the following excerpt from the record of the cross-examination of Massey:
BY MR. ROEBUCK: Your HonorI want to introduce this as an exhibit. You have seen it.
BY THE ANTHONYS' COUNSEL: Yes, sir, I have seen it.
BY MR. ROEBUCK: Do you have any objection?
BY THE ANTHONYS' COUNSEL: Yes, sir.
BY MR. ROEBUCK: You did get this on discovery.

*384 BY THE ANTHONYS' COUNSEL: Yes, sir.
BY MR. ROEBUCK: So you were aware of it.
BY THE ANTHONYS' COUNSEL: I was. I am aware of it.
BY MR. ROEBUCK: Your Honor, I have a final decree here I would like to enter in as evidence and it is a court ordered survey.
BY THE COURT: What is your objection, Mr. McNeel?
BY THE ANTHONYS' COUNSEL: The objection is that it has nothing to do with this lawsuit. That is a lawsuit styled Wesley T. Roebuck, Hortense I. Roebuck vs. Carl Denton and Katie S. Denton. The Anthonys are not parties to this.
BY MR. ROEBUCK: But the survey is what I am interested in.
BY THE COURT: I don't think you can get the survey in for this lawsuit through that one. I think these people have a right to examine your surveyor. I sustain the objection.
BY MR. ROEBUCK: He just stated that that was Denton property.
BY THE COURT: I sustain the objection. I don't think that is the means to get a survey in this lawsuit.
BY MR. ROEBUCK: The only reason that I want to do this is to establish the SW corner.
BY THE COURT: I am sure you want to establish the SW corner, but I don't think this is the way that you do that.
In his formal opinion which he rendered shortly after the conclusion of the trial in this case, the chancellor reasoned as follows about the inadmissibility of this survey:
Mr. Roebuck also attempted to offer a survey that had been introduced in another case in which he was a party, but in which the Anthonys were not parties. He did not offer to call the surveyor who had made that survey, or offer to introduce it by the surveyor who had made it. Without testimony of the surveyor, there was no way for the Anthonys to question its accuracy, or for the Court to know if it was properly performed. Without this data the Court could not permit its introduction.
The Roebucks base their fourth issue upon the excerpt from the record which we have quoted. They argue that the chancellor "erred in dismissing and failing to consider a court ordered survey by Kemp, Springer and Assoc., where the Roebucks had gained fee simple title to a part of the land in this case."
¶ 25. We begin our review of this issue by noting that the record contains neither a copy of the survey which Kemp, Springer and Assoc. had prepared nor a copy of the court order under which the Roebucks attempted to introduce the survey. However, from its review of the record in this case, this Court has determined that the Roebucks had apparently engaged in litigation in the Kemper County Chancery Court with Carlous B. and Carolyn S. Denton about the location of the boundaries of the three-acre parcel of land located in the southwest corner of the eighty-acre parcel of land which the Dentons had reserved for themselves in their conveyance to the Roebucks. Because the Roebucks intended to use this survey to establish "the southwest corner" of either the Dentons' three-acre parcel or the Roebucks' land and thus perhaps establish that the new fence had been built just north of the true boundary as Mr. Roebuck testified he had done, this Court appreciates the significance of the Roebucks' fourth issue.
¶ 26. Nevertheless, the Roebucks were grappling with the ancient prohibition against the admission of hearsay testimony. Mr. Roebuck attempted to introduce the survey as an exhibit to the testimony of Donny Massey, the executor of Welton Anthony's will to prove the correct location of the southwest corner of the parcel of land of which this survey was made. Massey *385 had not prepared the survey. Rule 801(c) of the Mississippi Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Rule 801(b) of the Mississippi Rules of Evidence defines "declarant" as "a person who makes a statement." M.R.E. 801(b). Under these two definitions, Massey was the declarant, and the survey was the statement "offered in evidence to prove the truth of the matter asserted," the "matter asserted" being the true location of the southwest corner of the parcel of land which had been surveyed and the results of which survey, the "survey,"or plat reflected. Thus, the plat of the survey was hearsay and, therefore, inadmissible. See Mississippi State Highway Com'n v. Viverette, 529 So.2d 896, 901-02 (Miss.1988) (holding that "[i]nsofar as [the witness's] testimony gave the results of a prior survey, it was hearsay" because "[t]he testimony was quite clearly offered to establish the substantive truth of the results of the prior survey [and because] the surveyor was not called and subject to cross-examination, the testimony [about the survey] should not have been admitted").
¶ 27. The Roebucks relied on the chancery court's having ordered that this survey be made in earlier litigation to circumvent the prohibition against the admission of the plat as hearsay evidence. Mississippi Rule of Evidence 804 states that former testimony is "not excluded by the hearsay rule if the declarant is unavailable as a witness." M.R.E. 804(b). More specifically, Rule 804(b)(1) provides:
Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
M.R.E. 804(b)(1).
¶ 28. The Mississippi Supreme Court offered the following discussion of the correct application of Rule 804(b)(1) in Emil v. The Mississippi Bar, 690 So.2d 301, 313-14 (Miss.1997):
Under Rule 804, this Court must first determine if [the witness] was unavailable. This concept in relevant part is defined by Rule 804(a)(5) as being "absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means." M.R.E. 804(a)(5) (1995). The proponent of the hearsay must carry the burden of proving unavailability.... If this burden is met and unavailability is proven, the statements must still fit one of the hearsay exceptions in Rule 804(b) in order to be admitted into evidence.
(citations omitted).
¶ 29. The Roebucks neither identified the surveyor and preparer of the plat prepared by Kemp, Springer and Assoc. nor demonstrated that this person was "unavailable as a witness." This failure alone is sufficient to deny the Roebucks reliance on Rule 804(b). Yet if the Roebucks had established that the surveyor was unavailable to testify, Rule 804(b)(1) would not have permitted the introduction of this survey because the Anthonys as "part[ies] against whom the [plat of the survey was then] offered," had no "opportunity and similar motive to develop the [surveyor's] testimony by ... cross ... examination." See M.R.E. 804(b)(1). Thus, this Court holds that the chancellor did not err when he sustained the Anthonys' counsel's objection to the Roebucks' introduction of the plat of this survey into evidence because, to quote the chancellor, "I think these people [the Anthonys] have a right to examine your surveyor." For these reasons, we affirm the chancellor's reasons expressed in his opinion for refusing to admit the survey into evidence and *386 resolve the Roebucks' fourth issue adversely to them.

F. The Roebucks' Second Issue
¶ 30. For their second issue, the Roebucks argue that the chancellor "abused [his] discretion in excluding relevant evidence and this was prejudicial to and affected substantial rights of [the Roebucks]." In fairness to the Roebucks, they urge a miscellany of evidentiary errors by which the chancellor "excluded relevant and admissible evidence from [his] consideration," but these errors are identified in general terms. In fact, this Court has already analyzed and resolved two of these "errors of omission" in the Roebucks' fourth and sixth issues. However, we will consider such further errors as we are able to discern in the Roebucks' brief.
¶ 31. The Roebucks appointed that the chancellor "during a period sustained objection before the question was asked and reprimanded [sic] important questions because the Court considered that the Roebucks were testifying for the witness." Yet again the Roebucks assert no specific example of the chancellor's error in considering that they "were testifying for the witness;" neither do they provide authority to support their assertion.
¶ 32. We quote from the record the following portion of Mr. Roebuck's direct examination of one of the witnesses whom he called as an example of the chancellor's comments to which the Roebucks object:
Q. The person who built the fence, do you know who built the fence?
A. Uh, between you and Ed Roebuck, Anthony?
Q. Uh huh.
A. No, I have no idea who built the fence. Mr. Burl Haggard, I would imagine.
Q. That is correct. Mr. Burl Haggard built the fence exactly inside of the old public road which was the wagon road back then.
BY THE ANTHONYS COUNSEL: Your Honor, I am not sure if he is testifying, or asking a question.
BY THE COURT: You need to ask a question, not testify.
BY MR. ROEBUCK: Okay.
¶ 33. In this example, Mr. Roebuck attempted to establish from the witness that "Mr. Burl Haggard built the fence exactly inside of the old public road which was the wagon road back then." Rule 611(c) of the Mississippi Rules of Evidence deals with what lawyers recognize as "leading questions" as follows:
Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily, leading questions should be permitted on cross-examination.
M.R.E. 611(c). The comment to this rule explains that "[l]eading questions as a general rule should not be used on direct examination since they suggest the answers the attorney wants from his own witness." M.R.E. 611 cmt (emphasis added). The comment then explains, "This gives an unfair advantage to the party who is presenting his case." In other words, the chancellor's objections to "the Roebucks' testifying for their witnesses" were nothing more than the chancellor's sustaining the Anthonys' counsel's objections to Mr. Roebuck's leading questions which he propounded to the witnesses whom he called. Pursuant to Mississippi Rule of Evidence 611(c), there can be no error here.

G. The Roebucks' First Issue

1. Preservation of the issue
¶ 34. Although we have reserved the Roebucks' first issue as the last issue for our analysis and resolution, we recognize that their first issue is their most important issue because it is the heart of their appeal. The Roebucks' first issue is that the chancellor's decision that the Anthonys "had acquired title to the land in litigation *387 by adverse possession was against the overwhelming weight of the evidence." We note that the Roebucks fully preserved their first issue in their motion to grant them a new trial which they timely filed after the chancery court had entered its judgment in this case. The record contains Mr. Roebuck's and the Anthonys' counsel's arguments to the chancellor regarding the merit of the Roebucks' motion for new trial, and the clerk's papers include the order denying the Roebucks' motion for new trial.

2. The chancellor's resolution of the Roebucks' first issue
¶ 35. Early in his opinion, the chancellor wrote that "[t]his is an unusual landline suit in that no survey was introduced to identify the true location of the line [according to the official government survey]" between the Roebucks' and the Anthonys' land. Later, the chancellor opined that because "the Court [did] not have any data as to the true location of the line between the parties, ... it must ... resort to simply determining whether either [the Roebucks or the Anthonys have] introduced sufficient evidence combined with what the Court observed on examination of the property in the presence of the parties, to establish ownership by adverse possession."
¶ 36. After the chancellor reviewed and summarized the evidence adduced by the parties in this case, he found "that the evidence is clear and convincing that the Anthonys had acquired the land south of the old fence by adverse possession by 1974, if in fact the fence is not on the true line." Next, the chancellor addressed "Mr. Roebuck's contention that he has repossessed [the land south of the old fence and north of the new fence] by adverse possession since 1974." After he reviewed and summarized the Roebucks' evidence of their possession of this disputed strip of land, the chancellor found "that at best the painting of the lines created a scrambling possession from 1974 to 1994 [the date that Mr. Roebuck completed the new fence along the south side of the disputed land], but not the exclusive possession required if Mr. Roebuck was to repossess [the disputed strip of land] by adverse possession."

3. Standard of review
¶ 37. That pro se litigants like the Roebucks would begin their argument in their brief with an essentially accurate recitation of the standard of review for issues like their first issue is noteworthy. We begin our review of the Roebucks' first issue with a discussion of what we find to be an appropriate standard of review for this issue. Rule 1 of the Mississippi Rules of Civil Procedure establishes that the Mississippi Rules of Civil Procedure "govern procedure in the circuit courts, chancery courts, and county courts in all suits of a civil nature, whether cognizable as cases at law or in equity...." M.R.E. 1. Rule 59(a) of the Mississippi Rules of Civil Procedure allows for the granting of a new trial. Rule 59(a) provides in pertinent part: "A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of Mississippi." M.R.E. 59(a). The comment to Rule 59(a) explains that "[t]he grounds for granting new trials remain the same as under prior state practice...." M.R.E. 59(a) cmt.
¶ 38. In Mayoza v. Mayoza, 526 So.2d 547, 549 (Miss.1988), the Mississippi Supreme Court discussed the application of Mississippi Rule of Evidence 59 to the granting of new trials in the chancery courts of this state. The supreme court opined:
Rule 59 imports a different, stricter standard. In this non-jury setting the Chancery Court necessarily focuses upon the merits of the case. The Court has the discretion to order a rehearing or to alter or amend the judgment if convinced that a mistake of law or fact has been made, or that injustice would *388 attend allowing the judgment to stand. The ground rules include those that preexisted the Civil Rules regarding the grant or denial of trial court rehearings.
Id. at 549-50. Therefore, where the chancellor was the sole trier of fact, a Mississippi appellate court will not disturb the chancellor's findings on appeal unless the appellant can demonstrate with reasonable certainty that they "were manifestly wrong and against the overwhelming weight of the evidence." Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978), quoted in Pieper v. Pontiff, 513 So.2d 591, 594 (Miss. 1987). "Even if [the appellate court] disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong...." Richardson, 355 So.2d at 668.
¶ 39. If the evidence adduced by the witnesses' testimony conflicts on issues that are material to the resolution of the litigation, the chancellor must judge their credibility. "[The chancellor] is best able to determine the veracity of [the witnesses'] testimony, and this Court will not undermine the chancellor's authority by replacing [the chancellor's] judgment with its own." Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993).

4. The Roebucks' argument offered to support their position on their first issue
¶ 40. Technically, the Roebucks' first issue questions only the chancellor's decision that Welton Anthony had acquired title to the disputed strip of land by adverse possession by the year 1974, when the Roebucks bought their eighty-acre parcel located north of but contiguous to the Anthonys' eighty-acre parcel. However, our review of the Roebucks' argument that the chancellor's decision was against the overwhelming weight of the evidence reveals that their argument focuses not on the deficiency of the Anthonys' evidence of their possession of this disputed strip of land before 1974 but rather on the sufficiency of the Roebucks' evidence that they had acquired title to the disputed strip of land after 1974.

5. The law of adverse possession
¶ 41. Section 15-1-13 of the Mississippi Code is the wellspring of the law of adverse possession. As of the date this case was tried, it read:
Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in Section 15-1-7. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one (31) years.
Miss.Code Ann. § 15-1-13 (Rev.1995). In Blankinship v. Payton, 605 So.2d 817, 820 (Miss.1992), the supreme court determined that neither appellant nor appellee had established their claim to the disputed land by adverse possession but rendered its judgment that a survey of the boundary line was correct and therefore was the true boundary between their respective lands. Of importance to the case sub judice are the following quotations from Blankinship:
To establish title by adverse possession (virgin title), the claimant must prove by clear and convincing evidence actual possession and each of the following six elements:
1) Under claim of ownership;
2) Actual or hostile;
3) Open, notorious, and visible;
4) Continuous and uninterrupted for a period of ten years;
5) Exclusive; and

*389 6) Peaceful.
Blankinship, 605 So.2d at 819 (citations omitted).
Possession is defined as "effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses. It includes control over the land and the intent to exclude others except with the occupant's consent." George A. Pindar, American Real Estate Law, § 12-13 (1976).... [A]n adverse possessor "must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." Walter G. Robillard and Lane J. Bouman, A Treatise on the Law of Surveying and Boundaries, S 22.08 (5th ed.1987).
Blankinship, 605 So.2d at 819-20.

6. Analysis of the chancellor's findings in the light of the law of adverse possession

a. The Anthonys' adverse possession south of the old, meandering fence established before 1974
¶ 42. The chancellor recognized that "[o]ur supreme court has long recognized that the existence of an old fence, including disputed land in with the land of the claimant, was strong evidence of the elements required to prove adverse possession." He then concluded:
Here with the evidence of the existence of a fence since 1928, the evidence on how timber was cut in the 1940's, the evidence of an agreement that it was the line in the 1950's, the grazing of cattle on it by the Anthonys in the 1950's, and the fact that there is no evidence that anyone but the Anthonys and their predecessors used it from 1928 to 1974, the Court finds that the evidence is clear and convincing that the Anthonys had acquired the land south of the old fence by adverse possession by 1974, if in fact the fence is not on the true line.
The record contains the following evidence which supports these findings of the chancellor. Lorene Whittle owned eighty acres of land adjoining the eastern boundaries of both the Anthonys' land to the south and the Roebucks' land to the north. She testified that she and her husband had owned their land since 1946 and that they had always considered the old fence to be the property line between the Anthonys' and Roebucks' property. James Haggard, who also owns land abutting the Anthonys' and Roebucks' property, testified that he had lived near the disputed strip of land since 1959 and that he had always thought of the old fence as the property line between the parties' property. Raymond Burch, who was seventy-one years old, testified that he had lived "right west of the Roebuck property, or part of the property" for twenty-six years. Burch testified that "[i]n September of 1944, [he] cut timber on the back half of [Welton] Anthony's land;" that "Mr. Will Anthony owned it [then]," and that he, Raymond Burch, "cut timber on that forty in there up to that fence there." Burch identified Will Anthony as Welton Anthony's grandfather. Burch opined that the old fence "ha[d] been recognized as the line between the [Anthonys' and Roebucks' land]."
¶ 43. Welton Anthony's widow, Bobbie Anthony, testified that she and her late husband had moved onto the Anthony property between 1954 and 1956. They had lived on the property since that time. Mrs. Anthony testified that she had always considered the old fence as the property line. She further stated that she and Mr. Anthony raised cattle on the eighty-acre parcel immediately south of the Roebuck's eighty-acre parcel from 1958 to 1972. During these fourteen years, the Anthonys used all eighty acres right up to the old fence line for their cattle.
¶ 44. The application of our standard of review to the chancellor's finding that the Anthonys had acquired title to all of the land south of the old fence by 1974 establishes that there was substantial evidence *390 to support this finding, especially since this Court must defer to the chancellor's fact-finding role. Neither can this Court conclude that the chancellor was manifestly wrong in arriving at these findings in discharging his duty to resolve the conflicts in the evidence which the Anthonys and the Roebucks adduced for his evaluation. Thus, we affirm the chancellor's finding that regardless of the location of the boundary line as established by the government survey, Welton Anthony and his predecessors in title had acquired title to all of the land which lay south of the old, meandering fence.

b. The Roebucks' failure to re-establish title to the strip of land lying south of the old, meandering fence and the new fence which Roebuck finished in 1994 by their adverse possession of that strip.
¶ 45. Although the language of the Roebucks' first issue does not encompass this aspect of their first issue, the Roebucks argue in their brief only this aspect of their first issue. Because they preserved it in their motion for new trial, we review and analyze whether the chancellor erred when he found that the Roebucks had failed to offer clear and convincing evidence that they had obtained title to the disputed strip of land by adverse possession. The chancellor summarized the Roebucks' evidence of their adverse possession of the disputed strip of land as follows:
In support of [his contention that he had repossessed the strip by adverse possession since 1974, Mr. Roebuck] says he had kept the line painted south of the old fence since 1974, that there have been hack marks and some metal pins on the line since 1974, and that he occasionally hunted on the area between the old fence and the painted line where he built the new fence in 1994. He further contends that he paid taxes on the property in question.
The chancellor dispatched Mr. Roebuck's payment of taxes with the explanation that because there was no survey of the disputed strip of land admitted during the trial, he could not determine whether the disputed strip of land was in the Roebucks' land to the north or in the Anthonys' land to the south. If the disputed strip lay within the Anthonys' land encompassed within the description of their land as conveyed to the Anthonys, then the Roebucks could not have paid the ad valorem taxes assessed against it.
¶ 46. About Mr. Roebuck's claim that he had hunted on the disputed strip of land, the chancellor "[did] not think that occasionally hunting on the strip with no knowledge of this by the Anthonys would support [Mr. Roebuck's] claim for adverse possession." The chancellor acknowledged that "the hack marks, the pipes, and the fact that [Mr. Roebuck] painted the line three times since 1974 ... may be some evidence of a claim to [the disputed strip of land] by Mr. Roebuck, but in contrast he only grazed cows north of the old fence...." The chancellor also noted that when Mr. Roebuck cut his timber, he cut "only north of the old fence."
¶ 47. The chancellor concluded:
With the continued existence of the old fence from '74 to '94, Mr. Roebuck's repairing of his old fence, and his virtual non-use of the property south of the old fence while he fully used his property north of the fence and the iron stakes, the Court finds that at best the painting of the lines created a scrambling possession from 1974 to 1994, but not the exclusive possession required if Mr. Roebuck was to repossess the property by adverse possession.
The chancellor's rejection of Mr. Roebuck's blazing what Mr. Roebuck considered to be the true property line between the Anthonys and him by painting and hacking the line as sufficient to establish the Roebucks' acquisition of title by adverse possession is supported by Kayser v. Dixon, 309 So.2d 526, 529-30 (Miss.1975), in which the Mississippi Supreme Court evaluated such acts of possession as follows:

*391 About the only thing appellant did upon the land during the ten year period (other than occasionally walking on it) was to paint a so-called line which he considered to be the true line. This did not toll the statute [Section 15-1-13]. It follows that upon the proof before him, the chancellor was warranted in determining that the appellees, without color of title, had acquired title to the disputed area of forest land through adverse possession evidenced by facts related by appellees' witnesses.
Once more our application of the standard of review in the light of Kayser determines that the Roebucks' evidence of their adverse possession of the disputed strip of land, i.e., blazing what Mr. Roebuck thought was the true line with paint and hack marks and hunting occasionally on the land south of the old fence, was simply insufficient to establish their actual possession of that strip as Section 15-1-13 demands, especially in light of both Kayser and Blankinship. These acts are simply inadequate to "unfurl [the Roebucks'] flag on the land, and keep it flying, so that the [Anthonys] may see ... that an enemy has invaded [their] domains, and planted the standard of conquest." See Walter G. Robillard and Lane J. Bouman, A Treatise on the Law of Surveying and Boundaries, S 22.08 (5th ed.1987) (quoted with approval in Blankinship, 605 So.2d at 819-20). Thus, we affirm the chancellor's finding that the Roebucks had failed to acquire title to the disputed strip of land by their adverse possession of it after the Anthonys and their predecessors in title had acquired title to it by adverse possession before the Roebucks bought their land in 1974.

IV. SUMMARY
¶ 48. This Court's affirming the judgment of the chancery court from which the Roebucks appealed demonstrates that this Court has "held [the Roebucks as pro se litigants] to the same rules of procedure and substantive law as represented parties." See Dethlefs, 511 So.2d at 118. However, we have deferred to the Roebucks' pro se status by dealing in some detail with our review and analysis of all six of their issues, some of which were hardly supported by argument or citation of relevant authority. Nevertheless, we hold that the chancellor's findings regarding the issues of the Roebucks and the Anthonys' acquisition of title to the disputed strip of land containing approximately four acres were supported by evidence which the chancellor found to be substantial and were, therefore, not manifestly wrong. Thus, this Court affirms the judgment of the chancery court and assesses the costs of this appeal to the Roebucks.
¶ 49. THE JUDGMENT OF THE KEMPER COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] The Anthonys' original complaint to quiet and confirm title and remove cloud named only Wesley T. Roebuck as a defendant. Later, by leave of the court, the Anthonys filed an amended complaint which included Mr. Roebuck's wife, Hortense I. Roebuck, because the conveyance of the tract of land which may have included the disputed four-acre parcel of land was to both Mr. and Mrs. Roebuck "as joint tenants ... with full rights of survivorship...." Afterwards, Mr. Roebuck continued to file pleadings and participated in the trial without benefit of employed counsel.
[2] Rule 608 reads:

(a) Opinion and Reputation Evidence of Character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.
M.R.E. 608.