800 So.2d 125 (2001)
Thomas WHITE, Elwood White and All Persons Residing Therein as "John Does", Appellants
v.
Corby Lee USRY and Doris J. Usry, Appellees.
No. 2000-CA-00961-COA.
Court of Appeals of Mississippi.
November 13, 2001.
*127 Sharon D. Henderson, Jackson, for Appellant.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Title to a small parcel of land was confirmed in the plaintiffs, who are the record title owners. Because no survey of the disputed property or other sufficient evidence of the location of acts of possession was properly admitted into evidence, we find that neither party proved its title. We therefore reverse and remand for further proceedings.

STATEMENT OF FACTS
¶ 2. The suit concerns ownership of a half-acre tract in rural Hinds County. It is a triangular parcel bounded on the west by the Illinois Central Railroad, on the south by Sawmill Road, and on the east by property owned by Thomas White. White had owned his property since 1964 and had built a house. Usry owned a farm on the south side of Sawmill Road. Corby Usry was deeded the half-acre in 1997 by Bart Clark. Usry wanted to purchase the tract because he believed that it was becoming a nuisance. Prior to Usry's purchase, Elwood White, Thomas White's brother, was given permission by Bart Clark to place a mobile home on Clark's property. In return, Elwood White promised to maintain the property owned by Clark. The boundary between the Clark-Usry land and the Thomas White property, and on what parcel the trailer was located, are the issues tried below.
¶ 3. Usry hired H.D. Lang and Associates, Inc. to survey the parcel and to establish the boundary line between Usry and White. Lang staked off the property. The survey showed Elwood White's mobile home to be on the parcel purchased by Usry. It also indicated that a corner of White's house encroached upon the Usry parcel.
¶ 4. In May 1997, Usry filed suit in justice court to remove White from the property. The suit was dismissed. In July of 1997, Usry sent White notice to vacate the parcel, but White refused. In February 1998, White engaged an attorney to send Usry a letter claiming that White owned the property. In May 1999, Usry used his own attorney to send White a letter, demanding that White vacate the parcel. White refused. It was then back to court.
¶ 5. On June 7, 1999, Usry filed a complaint for unlawful entry and detainer and for damages for encroachment and trespass in the County Court of Hinds County. Defendants were Thomas L. White, Elwood White, and others. The complaint contained a legal description of the half-acre parcel. White filed an answer and counter claim alleging that White actually had title to the parcel both by deed and through adverse possession. As a result of White's counter claim, the county court on its own motion transferred the entire suit to the Chancery Court of the First Judicial District of Hinds County. At some point in 1997, Elwood White's mobile home was moved from its original position *128 to a position closer to Thomas White's house.
¶ 6. After various other pleadings, a two day trial was held. The chancellor entered two judgments. The first recognized that title to the half-acre parcel was vested by warranty deed in Usry and that White did not establish ownership by adverse possession. As a result, the court ordered that White remove all personal property and structures from the parcel, that Usry be allowed to re-enter and stake out the boundary lines according to a survey conducted on his behalf, issued a writ of assistance to the Sheriff of Hinds County to remove White and his property if this was not voluntarily done within ten days. Usry also received attorneys' fees.
¶ 7. The second judgment entered by the chancellor corrected what was termed a scrivener's error that appeared in prior deeds in Usry's chain of title. White appeals from both judgments.

DISCUSSION
¶ 8. The appellee, Usry, failed to file a brief. The failure to respond with a brief has at times been labeled the equivalent of a confession of error, but it will not cause reversal if the appellate court "determines with confidence, after considering the record and brief of appealing party, that there was no error." Mississippi Employment Sec. Comm'n v. Powell, 787 So.2d 1277, 1280 (Miss.2001). What this review standard implies is that the appellate court will reverse if the appellant presents a reasonable legal and factual basis on which to do so, but there is no automatic reversal.
¶ 9. Not to be discarded merely because of the absence of an appellee's brief is the fact that "the findings of a chancellor will not be disturbed on review unless the chancellor abused his discretion, was manifestly wrong, or made a finding which was clearly erroneous." Zeman v. Stanford, 789 So.2d 798, 801-02 (Miss. 2001). Any issues of law are reviewed de novo. Id. at 802.

1. The Chancellor's Jurisdiction
¶ 10. Just what the chancellor had authority to decide is contested on appeal. As indicated, the suit began as an unlawful entry and detainer in county court, but was transferred to chancery court when the defendant, White, denied Usry's title.
¶ 11. White claims that a chancery court does not have authority to hear an unlawful entry and detainer action. These suits are by statute given to justice courts and, if one exists in the jurisdiction, county courts. Miss.Code Ann. §§ 9-9-21(1), 11-25-5, & XX-XX-XXX (1972 & Supp.2000). Such suits cannot determine title, as they are summary proceedings meant only to evict someone who without claim of right is depriving the owner of possession of some part of his property. Tate v. Tate, 217 Miss. 734, 740, 64 So.2d 908, 910 (1953).
¶ 12. Usry filed the unlawful entry and detainer action. White filed a counter claim asserting ownership of the Usry property by deed, ownership by adverse possession, and requesting that title be quieted and clear in themselves. Once White himself claimed title, the county judge found that he had no jurisdiction. The judge held that the suit had been transformed into one to confirm or quiet title and he transferred the case to chancery court. A county judge has the authority to transfer a suit to chancery court. This can be seen first by noting that circuit and chancery courts each have authority to transfer a case that is properly within the jurisdiction of the other court. Miss.Code Ann. § 11-1-37 (1972). A county court judge has authority to issue orders over cases pending before him "to *129 the same extent and in the same manner" as chancellors and circuit court judges. Miss.Code Ann. § 9-9-23 (1972). Thus once the county judge noted that the case had become one properly for chancery court, he could order its transfer.
¶ 13. Eight months after the counter-claim, Usry filed a supplemental pleading that in part answered the counterclaim, alleged that Usry owned the property, and declared White's claim to be a cloud that should be removed. This new pleading also requested immediate possession and confirmation of title. This was filed well passed the thirty-day deadline to answer. M.R.C.P. 12(a).
¶ 14. White claims that he was prejudiced by the late filing of Usry's plea. It was evident from the earlier pleadings that both parties were claiming title to the same property, so prejudice does not arise from any surprise. White's counterclaim sought to have title confirmed, something improper in an unlawful entry and detainer action in county court but eminently appropriate for a chancery suit. MISS. CONST. art. 6, § 160 (1890); Miss.Code Ann. §§ 11-17-29 & 11-17-31 (1972). So the only real question is whether the pleadings, structured initially as an unlawful entry and detainer, could support a suit to confirm or remove a cloud on title once the transfer to chancery occurred.
¶ 15. For example, White argues that Usry failed to deraign his title in his request for confirmation of title as required. Miss.Code Ann. § 11-17-35 (1972). However, failure to deraign title is not grounds for dismissal, but a party may file a Rule 12(e) motion to force the complainant to do so. Carpenter v. Haggard, 538 So.2d 776, 777-78 (Miss.1989). No such motion was filed. White also failed to deraign his alleged title to the parcel as part of his counterclaim to have title quieted in him.
¶ 16. We find that issue was fully joined to confirm and quiet title. The allegations were sufficient in each party's pleadings to alert the other to the demand that title be confirmed or quieted. The absence of a title deraignment was waived. The chancellor treated the claims in this manner. Among the conclusions in the final decree was that Usry had shown valid record title in himself. The chancellor rejected the sufficiency of evidence on adverse possession. The court declared that title to this half-acre tract was vested in Usry.

2. Authority of Chancery Court to Issue Writ of Assistance
¶ 17. White also alleges that the chancellor exceeded his authority to issue a writ of assistance to the sheriff to remove White from the parcel if White had not vacated voluntarily within ten days of judgment. For authority White relies on one opinion, which predates the 1890 constitution. Wofford v. Bailey, 57 Miss. 239 (1879). There the Supreme Court held that a chancery court had no jurisdiction to award possession of land in a suit to have a cloud removed from title; instead, "recourse must be had to a court of law to obtain possession...." Id. However, the 1890 constitution granted chancellors authority "to decree possession, and to displace possession; ... and in all cases where said court heretofore exercised jurisdiction, auxiliary to courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by a suit at law." MISS. CONST art. 6, § 160. Wofford has not been good law for over a century.
¶ 18. As was stated by the State's historic expert on chancery practice, Supreme Court Justice V.A. Griffith, "sometimes a defendant in possession of real property *130 refuses to surrender possession of it as adjudged by the court, in which case a writ of assistance, often called a writ of possession, is issued." V.A. GRIFFITH, MISSISSIPPI CHANCERY PRACTICE, 718-19 (2d ed. 1950). Also, "it is allowable to insert in the final decree a provision for the writ of possession, and it is immaterial that the bill of complaint contained no special provision to that effect." Id. at 719.
¶ 19. The chancery court has authority to issue a writ of assistance.
¶ 20. Having resolved the issues regarding the authority of the chancellor, we turn to the evidentiary matters raised on appeal.

3. The Lang Survey
¶ 21. White argues that the chancellor should not have admitted the survey that had been conducted for Usry by H.D. Lang and Associates, Inc. It was that survey that the chancellor used to establish that certain of White's property, including his trailer, was on Usry's land.
¶ 22. Neither party called any surveyor to testify. On the first day of trial, Usry attempted to have the Lang survey admitted into evidence. The chancellor sustained White's objection on the grounds that the survey could not be authenticated without the surveyor. After nearly two days of trial in which no one could testify as to the location of boundary lines, the chancellor asked whether someone "at some point was going to bring a survey into this?" The question is understandable as there was continual confusion as to what was actually in dispute. The chancellor stated near the conclusion of the trial that
we can't keep weaving back and forth into the matter referring to it, on the one hand, as a matter of not being sure where the line is and then, on another occasion, referring to it as a matter in which the line is known but in which we're talking about whether or not, regardless of where the line is, the Whites have now acquired possession of what the Usrys claim is their property. I mean, it doesn't do us any good to keep arguing about what is and what isn't the dispute here.
¶ 23. Usry again sought to have the Lang survey entered into evidence during White's testimony. White's attorney objected and argued that the surveyor needed to be available for cross-examination. Usry argued that White had himself produced the Lang survey during discovery. White's attorney admitted to being aware of the Lang survey but stated that it was Usry's burden to call the surveyor if he wanted to admit it into evidence. The chancellor asked the parties if there was any better evidence of the boundary line between the properties than the survey. Usry answered in the negative, but White continued to object on the basis that the surveyor himself had to testify to authenticate and respond to cross-examination. The chancellor admitted the survey into evidence.
¶ 24. The chancellor's reluctance to admit the survey was appropriate. A survey is a document that asserts facts, such as the location of boundaries or other real property features, and that document reflects the work and expertise of the surveyor. If the survey is being admitted into evidence to show the truth of the matters asserted in it, then it is hearsay evidence. M.R.E. 801(c). The chancellor understood that, but finally admitted the survey under an exception that provides if the declarant is unavailable to testify, hearsay may be admitted if it has "circumstantial guarantees of trustworthiness" equivalent to those that support the admission of hearsay in four recognized situations: *131 1) former testimony, 2) statement under belief of impending death, 3) statement against interest, and 4) statement of personal or family history. M.R.E. 804(b)(5).
¶ 25. Regardless of whether this exception otherwise would apply, the court must first determine that the surveyor was "unavailable." M.R.E. 804(a). Failure to call a witness to testify who is within the jurisdiction of the court and has not indicated any refusal to answer questions, does not equate to "unavailability." M.R.E. 804(a)(1)-(6). There was no proof of unavailability.
¶ 26. In order to have a survey properly admitted into evidence, the surveyor needs to be called to explain and be subject to cross-examination. Mississippi State Highway Comm'n v. Viverette, 529 So.2d 896, 901-02 (Miss.1988). In one case relying upon Viverette, this Court held that if the surveyor had testified in earlier court proceedings about the same survey, that testimony would be admissible if the surveyor were shown to be unavailable as meant under Rule 804. Roebuck v. Massey, 741 So.2d 375, 385-86 (Miss.Ct.App. 1999); M.R.E. 804(b)(1) (former testimony). There was no former testimony to draw upon here, so Roebuck is of no relevance.
¶ 27. The chancellor committed error in admitting the survey. Since no usable survey was ever presented in evidence, we examine the claims of the parties to determine their viability in the absence of a survey.

4. Claims of Record Title and Adverse Possession
¶ 28. Usry alleged that White was trespassing on part of his property. White responded by claiming title both as a matter of adverse possession but perhaps also as a matter simply of deed boundary line location that his trailer was not on Usry's property.
¶ 29. The only evidence of Usry's record title admitted at trial was a title report from Mississippi Valley Title Insurance Company. It listed Usry as the record title holder of the half-acre tract. The title report was based on an examination of the deeds that had been filed in the past thirty-two years. We have already addressed that deraignment of title is a matter that can be waived, but here the proof was quite limited chronologically. May a chancellor properly confirm title based on a thirty-two year title certificate and without a deraignment of title? We defer an answer to that question, since there is a more serious defect in the evidence.
¶ 30. It is self-evident that someone who wants title confirmed must show good title in himself. Broome v. Jackson, 193 Miss. 66, 72, 7 So.2d 829, 830 (1942). To have title confirmed, the claimant must either be in possession or the property must be unoccupied by anyone. Id.; Miss.Code Ann. § 11-17-29 (1972). To remove a cloud on title, the claimant may properly bring suit against someone in possession but must show that his title is superior to that of the person in possession. Broome, 193 Miss. at 72, 7 So.2d at 830; Miss.Code Ann. § 11-17-31 (1972).
¶ 31. Usry's obvious problem is that without a survey being admitted into evidence and with the eastern boundary line being in fair dispute, he could not demonstrate that he was in possession of this half-acre tract or that it was unoccupied. Thus, no confirmation of title could be allowed.
¶ 32. We next examine whether the absence of a survey prevents Usry from being able to remove a cloud on his title that would arise if White is improperly *132 possessing part of his property. White initially claimed to have a deed to this property. At trial, though, White admitted that no such deed existed. White's remaining claim was based on adverse possession. The claim focused on two distinct elements of possession: 1) White possessed that part of Usry's property upon which a mobile home was placed, and 2) White possessed that part of Usry's property upon which a corner of White's house encroached.
¶ 33. Without a survey in evidence, White was unable to demonstrate whether either the trailer or the house lies on the property described in the Usry deed. The chancellor ruled that White failed to prove his adverse possession claim in regards to the mobile home, but not because of the inability to know where the trailer was located. Instead, the testimony developed at trial demonstrated that if the mobile home was placed on the property now owned by Usry, the placement occurred at the earliest in 1992 with the permission of the prior record title owner Bart Clark. Clark later sold this land to Usry. Elwood White, who lived in the mobile home, testified it was placed on the property in 1997. Regardless, the mobile home had not been in any relevant location for the required ten-year period. Miss.Code Ann. § 15-1-13 (Supp.2000). Further, the evidence convincingly indicated that the placement began with permission of the record title owner. Possession that at its inception is with permission cannot become adverse until a clear claim of hostile ownership is made by the user. Patterson v. Harris, 239 Miss. 774, 785, 125 So.2d 545, 550 (1960).
¶ 34. Therefore, even without a survey the claim to property on which the trailer was located fails.
¶ 35. White also claimed that a house and pig pens behind the house had been in their location since 1964. To give context to this claim, we note that the Lang survey showed that a corner of White's house encroached upon Usry's property by nine feet. Since the survey was not properly in evidence, there was no proof that White had adversely possessed any part of the Usry property. All that the chancellor could determine was that a house and adjacent structures had been in existence since 1964, but he could not determine the location of any part of those improvements. Therefore White failed to prove that he adversely possessed any part of the Usry property.
¶ 36. This failure by White, though, does not ultimately aid Usry in his effort to remove the cloud on his title. White's long-time use of the house and adjacent structures was not shown by Usry to be outside the boundaries of the property on which he wanted confirmation of title or removal of a cloud. Our inability to know the location of these structures in relation to the boundary line means that no removal of a cloud on title could be made. Usry did not, in other words, prove that he occupied the property or at least that no one else did.
¶ 37. Usry succeeded in having introduced a survey that was vital to his case, but we have now on appeal found that the admission was error. If evidence critical to a party's case was admitted at trial but then is excluded on appeal, that party is entitled to a new trial to introduce alternative evidence. Robinson v. Williams, 213 Miss. 467, 474-75, 57 So.2d 294, 297-98 (1952). The premise is that a party who has successfully had evidence indispensable to his case admitted at trial has no reason to offer other available evidence that might prove the same point. Once the appellate court reverses the evidentiary ruling, the party should be given a new opportunity to offer evidence. That *133 premise may not fit the facts of this trial very well, as the chancellor throughout the trial indicated problems with admitting the survey without a proper authentication. For whatever reason, perhaps financial, no one was inclined to call a surveyor and finally the chancellor admitted the survey anyway. Still, we apply the general rule requiring a remand and do not measure whether on this uncertain record the rule's purposes are fully satisfied.
¶ 38. Whether White receives the benefit of this remand is a procedurally difficult question. We are reversing and remanding because Usry offered a survey and it was admitted erroneously. Had that survey been usable, then Usry could have proved the extent to which his title should be confirmed and White's cloud removed. White on the other hand never offered any survey. Instead, he sought to prove adverse possession without proof of location of possession. Indeed, White is the one who argues that the only survey in evidence should be excluded by this Court. Having failed to offer evidence adequate to prove the claim of adverse possession, White could be held barred from again trying to prove his case at a new trial. Nonetheless, the survey that was admitted into evidence indicated that White might have been possessing some of the property included within Usry's deed description. We find that not permitting White to continue his claim on the remand, despite what the survey offered by Usry suggests, is to inject confusion and artificiality to any new presentation of evidence on the state of title and possession. Since Usry is being permitted to proceed on his claim despite not having a properly admitted survey, we also permit White to do so.

5. Description error in deeds
¶ 39. No real dispute exists that there was a description error in some deeds that placed the tract in what was called the "NW ¼ or SW ¼." The description should have been the "NW ¼ of SW ¼." That was properly corrected. Our inability to determine the effect of possession on the title of the property covered by those deeds does not prevent the correction of the deeds themselves.

Conclusion
¶ 40. We agree with White that the orders requiring the removal of his property under a writ of assistance must be reversed. We do not have evidence of the location of the relevant boundary lines. Consequently, whether the mobile home, house, or any other property intrudes on Usry's property was not shown. For similar reasons, we reverse the confirming of title in Usry and the removal of any cloud on title arising from White's claims. These matters are remanded to the chancellor.
¶ 41. The chancellor was without authority to award Usry attorneys' fees. This was a suit to confirm title and to remove a cloud on title. We find no authority for the awarding of attorneys' fees in such a case. Court costs, however, should be assessed against the losing party. Since both sides effectively lost on their respective claims, it would be appropriate to split the costs. However, since we are remanding, we leave trial court costs for further trial court review.
¶ 42. Finally, we affirm the correction of the description error in previous deeds.
¶ 43. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY DENYING CONFIRMATION OF TITLE IN THE APPELLANTS BY ADVERSE POSSESSION, CONFIRMING TITLE IN THE APPELLEES, AND GRANTING A WRIT OF ASSISTANCE IS REVERSED AND REMANDED. *134 THE JUDGMENT ORDERING THE APPELLANTS TO PAY ATTORNEYS' FEES IS REVERSED AND RENDERED. THE JUDGMENT INSOFAR AS IT CORRECTS DESCRIPTIONS IN RELEVANT DEEDS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEES.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, and CHANDLER, JJ., concur.
BRANTLEY, J., not participating.