# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00467-COA

**CARL ERVES AND DALE ERVES**                                              **APPELLANTS**

**v.**

**GERALD HOSEMANN, VALDA R. HOSEMANN,**                    **APPELLEES**
**TROYCE LUKE GULLETT AND KRISTY**
**BURKE GULLETT**

DATE OF JUDGMENT:            04/13/2020
TRIAL JUDGE:            HON. BENNIE LE NARD RICHARD
COURT FROM WHICH APPEALED:            WARREN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:            KENYA REESE MARTIN
ATTORNEYS FOR APPELLEES:            MICHAEL S. McKAY
            KEVIN EARL GAY
NATURE OF THE CASE:            CIVIL - REAL PROPERTY
DISPOSITION:            AFFIRMED - 03/08/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     This case involves a dispute about real property. Carl and Dale Erves sought injunctive and monetary relief based on an alleged encroachment by Gerald and Valda Hosemann and Troyce and Kristy Gullett onto the Erveses' property. The chancellor found that the Erveses were not entitled to the relief they sought, and they appealed.

### FACTS AND PROCEDURAL HISTORY

¶2.     This action involves property situated in Section 8 and a portion of Section 7, Township 15 North, Range 5 East in Warren County, Mississippi. A property line dispute arose between landowners who own property on each side of Bovina Cutoff Road and share

an abutting property line.

¶3.     The Erveses' ancestor John Erves owned over 200 acres of land in Section 8 and in a portion of Section 7, Township 15 North, Range 5 East in Warren County, Mississippi. John Erves donated approximately two acres to Warren County for use in installing a public road called Bovina Cutoff Road. The road generally runs north and south and originally had a large curve that cut through the Erveses' property. According to a 1966 survey presented by the Erveses, they owned a narrow strip (approximately 150 feet) on the west side of Bovina Cutoff Road that was marked with a barbed wire fence, which the Erveses claim was not moved until the Hosemanns built driveways. In September 1966, John Erves' property was subdivided into ten parcels. Tract 4, through which the curved section of Bovina Cutoff Road ran, was bought by James Wilson in 1986. Ronald Lampkin owned a large tract of property (also situated in Section 7, Township 15 North, Range 5 East) that was adjacent to the Erveses' property. The Erveses' property and the Lampkin property shared a common boundary that ran north to south. The Erveses' owned the land on the east side of the property line and Lampkin owned the land on the west side of the property line. The Hosemanns and the Gulletts (hereinafter referred to collectively as the "Hosemanns" unless otherwise specified) each purchased land from Ronald Lampkin in April and May of 2016, respectively, and built homes on their properties. These properties are adjacent to and abut Bovina Cutoff Road. Wilson deeded Tract 4 and part of Tract 5 to Carl Erves in August 2016. The boundary between the Hosemanns' property and the Erveses' property runs north

2

to south. In 2018, Carl Erves quitclaimed the property to himself and his cousin Dale Erves.[1]
We note that both Carl and Dale Erves left Mississippi in the early 1980s and later testified
that they return only a few times a year.

¶4.    In 2016, just after buying their property, the Hosemanns obtained the necessary
permits from Warren County so they could build driveways connecting Bovina Cutoff Road
to their properties, and Wilson, the prior owner of Tract 4, did not object to the construction.
Although construction on the Hosemanns' driveways had begun prior to the Erveses coming
into possession of Tract 4, the Erveses claim that the Hosemanns' driveways encroach on
their land. On July 28, 2017, Carl Erves filed an action for a preliminary and permanent
injunction to stop the Hosemanns from using their driveways and accessing their property
from Bovina Cutoff Road; he also sought monetary damages.[2] There was no claim to remove
a cloud on title or for adverse possession.

¶5.    The case was originally assigned to Judge Vickie R. Barnes but was reassigned to
Judge Marie Wilson. Judge Wilson presided over a bench trial on October 2-3, 2018. Judge
Bennie L. Richard replaced Judge Wilson as chancellor upon her retirement and issued a
ruling in favor of the Hosemanns on April 13, 2020. The chancellor held that the Erveses
had failed to establish legal title to the property on the west side of Bovina Cutoff Road

---

[1] The Erveses' petition did not contain a deraignment of title. While it does not appear to us that deraignment was required in this instance, the "failure to deraign title is not grounds for dismissal[; instead,] a party may file a Rule 12(e) motion to force the complainant to do so." *White v. Usry*, 800 So. 2d 125, 129 (¶15) (Miss. Ct. App. 2001). Where this does not occur, as in this case, the failure to provide a title deraignment is waived. *Id.* at 129 (¶16).

[2] Dale Erves joined the litigation in 2018 after he acquired an interest in the property.

where the Hosemanns' driveways are located. Specifically, the chancellor found that (1) the Erveses did not obtain a survey when they bought the property; (2) the Erveses failed to offer expert testimony pertaining to the property's ownership; and (3) based on the testimony of the Hosemanns' experts, the boundary line of the Erveses' property had not changed, and the barbed wire fence the Erveses tried to establish as the boundary line was not an accurate measure of the line because it had been moved when Bovina Cutoff Road was paved and widened. The Erveses argue on appeal that the chancellor erred (1) by admitting the testimony of Hosemanns' two expert witnesses; and (2) because his judgment was against the overwhelming weight of the evidence.

## STANDARD OF REVIEW

¶6. "In boundary disputes, a determination of the legal boundary between properties is a question of fact for the chancellor." *Kleyle v. Mitchell*, 736 So. 2d 456, 459 (¶8) (Miss. Ct. App. 1999). "The same standard applies to questions involving the accuracy of a survey." *Id.* This Court reviews a chancellor's factual findings for abuse of discretion. *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000). "Put another way, this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based upon substantial evidence, the court [is] manifestly wrong." *Yarbrough v. Camphor*, 645 So. 2d 867, 869 (Miss. 1994) (quoting *Tricon Metals & Servs. Inc. v. Topp*, 516 So. 2d 236, 238 (Miss. 1987)). For questions of law, we employ a de novo standard of review. *Cherokee Ins. Co. v. Babin*, 37 So. 3d 45, 48 (¶8) (Miss. 2010).

## DISCUSSION

4

¶7.    "The ownership of property and the right to have it protected in the courts is so deeply embedded in the law that the denial of such right is always a matter of grave concern to the courts." *Bright v. Michel*, 242 Miss. 738, 750, 137 So. 2d 155, 159 (1962).

## I.    Whether the chancellor erred by allowing Richard Tolbert and Marc Broome to testify as expert witnesses.

¶8.    The Erveses argue on appeal that neither of the Hosemanns' expert witnesses, Richard Tolbert or Marc Broome, should have been allowed to testify at trial. The Erveses made no pre-trial *Daubert*[3] challenge to the use of Tolbert or Broome as experts. However, there is no requirement that an actual hearing be held before determining the admissibility of expert testimony to comply with *Daubert*. *Gray v. State*, 202 So. 3d 243, 257 (¶47) (Miss. Ct. App. 2015). "[T]he basic requirement under the law is that the parties have an opportunity to be heard before the [trial] court makes its decision." *Id.* (quoting *Edmonds v. State*, 955 So. 2d 787, 792 (¶10) (Miss. 2007)). During the trial, the Erveses objected to the qualification of Tolbert and Broome as experts based on the allegedly scant number of times they had previously testified as experts and clearly indicated to the chancellor that this was their "only objection." Counsel for the Erveses also stated that "[Broome's] testimony is really going to be based on speculation[,]" but no objection was made on this basis, nor were the experts' credentials or opinions challenged. The chancellor accepted both Tolbert and Broome as experts.

¶9.    "A trial judge's determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion[,] and that decision will only be disturbed when

---

[3] *Daubert v. Merrill Dow Pharms. Inc.*, 509 U.S. 579 (1993).

there has been a clear abuse of discretion." *Denham v. Holmes ex rel. Holmes*, 60 So. 3d 773, 783-84 (¶34) (Miss. 2011). Similarly, "the admission or exclusion of expert testimony falls within the sound discretion of the trial court and will only be reversed if the decision was arbitrary or clearly erroneous." *Greenwood Leflore Hosp. v. Bennett*, 276 So. 3d 1174, 1179 (¶14) (Miss. Ct. App. 2018). In deciding whether a witness may give expert testimony, a court must look to the Mississippi Rules of Evidence. Regarding expert testimony, Rule 702 of the Mississippi Rules of Evidence provides:

> [I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Mississippi Rule of Evidence 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible.

¶10. "[A]n expert's qualification and reliability of testimony are separate questions." *Rebelwood Apartments RP, LP v. English*, 48 So. 3d 483, 494 (¶51) (Miss. 2010). "The purpose of qualifying a witness as an expert[] is to allow opposing counsel the opportunity to challenge the witness' credentials and qualifications prior to testimony being proffered. It puts opposing counsel on notice and grants an opportunity to prepare rebuttal." *Hobgood v. State*, 926 So. 2d 847, 854-55 (¶24) (Miss. 2006) (citation omitted). Although no specific reference is made to Rule 702, the Erveses' objection to Tolbert and Broome on the basis that

6

they lacked experience testifying as expert witnesses appears to have been a challenge their qualifications. Tolbert said he had testified four or five times, and Broome had testified once.

¶11. Although Rule 702 lists "experience" as one of the ways in which a witness may qualify as an expert, this does not mean that the witness must have experience testifying as an expert. Clearly, Rule 702 directs the court to look at the "knowledge, skill, experience, training, or education" of each proposed expert with an eye to the subject matter about which they have been designated to testify. In this situation, Tolbert and Broome had less experience as expert witnesses than some, but they had many years of experience in engineering and surveying. Tolbert graduated with an engineering degree in 1981 with a specialty in surveying and has been licensed by the Mississippi Board of Licensure for Engineers and Professional Surveyors since that time. He has been a licensed surveyor for thirty-seven years. Broome obtained his engineering degree in 2001. He has been licensed as an engineer since 2001 and as a surveyor since 2004. He has completed thousands of surveys. Both Tolbert and Broome testified about the methodologies they used to survey the Hosemanns' property. Accordingly the chancellor did not abuse his discretion in finding that Tolbert and Broome qualified as experts.

¶12. The chancellor also found the testimony from Tolbert and Broome would be relevant and reliable. "When determining whether expert testimony is admissible, our trial judges should act as gatekeepers and must determine whether the proposed testimony meets the requirements of Rule 702 [(governing testimony of expert witnesses)] and *Daubert*'s

relevance and reliability prongs." *Patterson v. Tibbs*, 60 So. 3d 742, 749 (¶22) (Miss. 2011). Expert testimony "is relevant when it helps the fact finder understand the evidence or resolve a fact in issue." *Willie v. State*, 204 So. 3d 1268, 1273 (¶12) (Miss. 2016). "Testimony is reliable when it is 'based upon sufficient facts or data,' is 'the product of reliable principles and methods,' and when 'the witness has applied the principles and methods reliably to the facts of the case.'" *Corrothers v. State*, 148 So. 3d 278, 294 (¶25) (Miss. 2014) (quoting MRE 702). Reliable testimony "must be grounded in the methods and procedures of science, not merely a subjective belief or unsupported speculation." *Worthy v. McNair*, 37 So. 3d 609, 615 (¶16) (Miss. 2010).

¶13. Despite the argument in the Erveses' briefing on appeal about the reliability of Tolbert's and Broome's testimony, the *only* objection set forth at trial pertained to the number of times they had previously testified as expert witnesses. Specific objections must be presented to the trial court so that the judge has the opportunity to rule on them. *Shields v. Easterling*, 676 So. 2d 293, 296 (Miss. 1996). This Court cannot review an objection based on a different legal theory from one raised at the trial level. *Id.* Although we are not bound to address the reliability of Tolbert's and Broome's testimony, we find it prudent to do so because the Erveses also have challenged the sufficiency of the evidence, and the chancellor's ultimate finding relies, in large part, on this expert testimony.

## A. Tolbert's Expert Testimony

¶14. Tolbert's surveys were not prepared for this litigation; they were prepared in conjunction with the sale of the property from Lampkin to the Hosemanns and the Gulletts.

Tolbert testified that all his opinions were given with a reasonable degree of certainty and that he abided by the standard principles of surveying when preparing the surveys for Lampkin. Before preparing the survey, he reviewed an abstract of title, notes, and old township plats from the general land office in the Warren County Courthouse, tax maps, the State Aid Road Plan for Bovina Cutoff Road, and aerial photographs, all in addition to going to the property. He did not review the 1966 survey because he was only locating the boundaries of the Hosemanns' and the Gulletts' property. Tolbert located the monuments described in the deeds he relied on and determined that the eastern portion of both the Hosemanns' and the Gulletts' property abuts Bovina Cutoff Road, and the dividing line between the properties is, in fact, in the middle of the road. He placed a "PK pin," a type of monument normally used by surveyors, for the purpose of marking the common corner between the Hosemanns' and the Gulletts' properties. Tolbert testified that the title line is the common boundary between the Erveses on the east and the Hosemanns and the Gulletts on the west, and that title line is actually in the pavement of Bovina Cutoff Road. According to Tolbert, the State Aid Road Plan had the following effect on the Erveses' property:

> Q. Based on these drawings that represent where the old road was and the property title line is based on those drawings before the new road was built would the property owners on the east side of the old road, that would be the Erves, would they have had a strip of land between the old road west to the fence?
>
> A. Yes, ma'am.
>
> Q. But since the road has been realigned and moved do you have any opinion of how that affected the[ir] property line?
>
> A. A large portion of that is just absorbed into the roadway -- the roadway

9

and proposed right of way -- the new road.

He stated that the Hosemanns' and Gulletts' driveways did not cross over their property lines onto the Erveses' property. We find no abuse of discretion in the chancellor's finding Tolbert's testimony was reliable.

## B. Broome's Expert Testimony

¶15. Broome testified that he did not use the PK pin placed by Tolbert (which the Erveses make much of) to find a starting point for his survey. Instead, he found other corners based on the 1966 survey and Tolbert's plat. Broome prepared his own survey plat after looking at relevant property deeds, sending a team to the property, locating all the monuments he could from the 1966 survey (approximately 80%), studying the Mississippi State Aid Road Plan for Bovina Cutoff Road, and reviewing aerial photographs—all of which are customary methods used in surveying and engineering. Ultimately, the coordinates and measurements used to show the boundaries in the 1966 survey were still accurate when taking into account new technology. Broome testified, "The road moved. That's the only thing that changed on the old survey and my survey is the road shifted. The property line is in the same location." He further stated that a fence is not necessarily indicative of a boundary line, and in this instance, when Bovina Cutoff Road was widened and the course was changed so it curved slightly less than before, the updated road covered the Erveses' property on the west side of the old road. Broome's ultimate opinion, to a reasonable degree of certainty, was that the Hosemanns' and Gulletts' driveways were completely within their property lines.

¶16. The reliability inquiry into the admission of expert testimony under the modified

10

*Daubert* standard is "'a flexible one,' with the trial court having 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Univ. of Miss. Med. Ctr. v. Peacock*, 972 So. 2d 619, 624 (¶11) (Miss. Ct. App. 2006) (quoting *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 37 (¶13) (Miss. 2003)). Despite the Erveses' argument to the contrary, whether the fence was moved makes absolutely no difference here. Although the Erveses claim the fence, in its original place, tracked the boundary of their property line, they also rely on the 1966 survey. The Hosemanns' experts did not invalidate the 1966 survey or change the property line between the parties in any way; they took into account the 1984-1986 State Aid Road Plan (which the Erveses did not) that widened and paved Bovina Cutoff Road and, at the same time, realigned the roadway where it cut through the Erveses' property so that it curved slightly less than it had before. As a result of the modification of the road, any existing fence would have had to have been relocated to make way for the road. Again, the updated road covered the Erveses' property on the west side of Bovina Cutoff Road. The chancellor therefore did not abuse his discretion in finding Broome's testimony was reliable.

II.     **Whether the chancellor's ruling was against the overwhelming weight of the evidence.**

¶17.    The Erveses provide no authority in support of their allegation that the chancellor's ruling was against the overwhelming weight of the evidence. The Mississippi Rules of Appellate Procedure require that the argument section of an appellant's brief "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on."

11

M.R.A.P. 28(a)(7). The Erveses' brief sets forth only a short recitation of the facts from their perspective. This presentation clearly is not the type of information contemplated by Rule 28(a)(7). The Mississippi Supreme Court and this Court have consistently held that the "[f]ailure to cite any authority is a procedural bar, and [a reviewing court] is under no obligation to consider the assignment." *Taylor v. Kennedy*, 914 So. 2d 1260, 1262 (¶4) (Miss. Ct. App. 2005). Despite the Erveses' failure, we will briefly address this assignment of error.

¶18.    "In determining whether a . . . verdict is against the overwhelming weight of the evidence, we must accept as true the evidence presented as supportive of the verdict, and we will disturb a . . . verdict only when convinced that the lower court has abused its discretion . . . or if the final result will result in an unconscionable injustice." *Myles ex. rel Sparks v. Miss. Entergy Inc.*, 828 So. 2d 861, 869 (¶18) (Miss. Ct. App. 2002). Furthermore, once a verdict has been returned in a civil case, "we are not at liberty to direct that [a] judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical [finder of fact] could have" made the same finding. *Starcher v. Byrne*, 687 So. 2d 737, 739 (Miss. 1997).

¶19.    In this instance, the Erveses presented no expert testimony to rebut what the Hosemanns presented. Although expert testimony is not required, the Erveses' proof that the Hosemanns' driveways encroached on their property does not provide a sufficient basis for their requested remedies. The Erveses largely rely on a 1966 survey that fails to take into

12

account the 1984 widening and paving of Bovina Cutoff Road as part of a State Aid Road Plan and lay-witness testimony evincing that the fence was on the property line. Bovina Cutoff Road originally cut through the Erveses' property, but the State Aid Road Plan called for Bovina Cutoff Road to be widened and moved, which resulted in the road extending over the property lines of all parties. Once the road work was completed, the updated road covered the Erveses' property that had once been to the west of Bovina Cutoff Road. Our review of the evidence and testimony presented by the parties leaves us unpersuaded that the Hosemanns' case was so weak or that the Erveses' proof was so persuasive that the chancellor's ruling amounts to a manifest injustice. We find no basis on which to overturn the chancellor's decision.

## CONCLUSION

¶20. The chancellor properly allowed the testimony of the Hosemanns' experts, Richard Tolbert and Marc Broome. We further hold that the chancellor's ruling was not against the overwhelming weight of the evidence.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

13