# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00496-COA

TONY WIGGS                                                        APPELLANT

v.

WILLIAM M. BOYKIN, JR. AND PHILLIP                               APPELLEES
MORLINO

DATE OF JUDGMENT:              12/19/2022
TRIAL JUDGE:                   HON. JOSEPH KILGORE
COURT FROM WHICH APPEALED:     CARROLL COUNTY CHANCERY COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:       KELSEY LEIGH DISMUKES
                               J. LANE GREENLEE
ATTORNEY FOR APPELLEES:        P. SCOTT PHILLIPS
NATURE OF THE CASE:            CIVIL - REAL PROPERTY
DISPOSITION:                   AFFIRMED - 08/20/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     William M. Boykin Jr. and Phillip Morlino (the Appellees) filed a complaint in the

Carroll County Chancery Court against Tony Wiggs to partition two separate tracts of real

property.  The chancellor entered an order granting a partition and awarding Wiggs an

equitable adjustment resulting from the partition.  Wiggs filed a motion for a new trial, which

the chancellor denied.

¶2.     Wiggs now challenges the following: the order granting the partition, the order

awarding the equitable adjustment, and the order denying his motion for a new trial.  Finding

no error, we affirm the chancery court's orders.

## FACTS

¶3.    This partition action involves two separate tracts of real property in Carroll County: (1) 94 acres owned by Boykin and Wiggs as tenants in common (Boykin-Wiggs Tract) and (2) 154 acres owned by Boykin, Wiggs, and Morlino as tenants in common (Boykin-Wiggs-Morlino Tract).[1]

¶4.    In May 2021, the Appellees filed a complaint for the partition of the Boykin-Wiggs Tract and the Boykin-Wiggs-Morlino Tract.  The Appellees requested that the chancellor divide each of the properties into equal-valued tracts of land.

¶5.    In response to the complaint, Wiggs filed a motion for a more definite statement pursuant to Mississippi Rule of Civil Procedure 12(e), arguing that the Appellees failed to deraign the title to the properties as required by Mississippi Code Annotated section 11-17-35 (Rev. 2019).  In response, the parties entered into an agreed order stating that the Appellees would file a first amended complaint for the partition containing a deraignment of title pursuant to section 11-17-35.

¶6.    On July 16, 2021, the Appellees filed their first amended complaint for partition of real property.  The amended complaint again requested the partition of the two tracts of property, and the pleading contained a deraignment of title for the Boykin-Wiggs Tract dating back to 1898 and 1901 and a deraignment of title for the Boykin-Wiggs-Morlino Tract dating back to 1919.

¶7.    Wiggs filed an answer to the first amended complaint and admitted to the ownership

---

[1] The record interchangeably refers to this tract as 154 acres and 150 acres.

and description of the property, as well as to the deraignments of title. However, Wiggs alleged in his answer that the deraignments were insufficient because they failed to show that title had passed from the United States, as required by section 11-17-35.

¶8. In December 2021, the parties entered into an agreed order for appraisal of the properties at issue. Pursuant to the order, Ken McDougal was retained to appraise the land, and Chris Green was retained to appraise the timber on the properties. Ken McDougal submitted his appraisal for the properties, valuing the Boykin-Wiggs Tract at $108,100 and the Boykin-Wiggs-Morlino Tract at $192,500. McDougal clarified that the values did not include any timber currently growing on the properties. Chris Green conducted his appraisal of the timber in January 2022. His appraisal valued the timber on the Boykin-Wiggs Tract at $60,013.32 and the timber on the Boykin-Wiggs-Morlino Tract at $67,278.20.

¶9. In November 2022, the chancellor held a trial on the matter and heard testimony from Wiggs, Boykin, Morlino, McDougal, and Green. The trial testimony reflects that Wiggs, Boykin, and Morlino agreed to partition the two tracts by exchanging Wiggs's one-third interest in the Boykin-Wiggs-Morlino Tract for Boykin's one-half interest in the Boykin-Wiggs Tract, which would give Wiggs full ownership of the Boykin-Wiggs Tract. Wiggs argued, however, that he was also entitled to owelty as an equitable adjustment for the difference in the value of the tracts.

¶10. McDougal, the land appraiser, testified regarding the appraisal value of the two tracts of land, and he stated that there had been no appreciable change in the valuations since the date of the appraisals.

3

¶11. Green, the timber appraiser, testified that the Boykin-Wiggs-Morlino Tract contained a 23-acre streamside management zone (SMZ), and the Boykin-Wiggs Tract contained a 40-acre SMZ.[2] Green explained that SMZs are "self-imposed guidelines[s]" for protecting stream water quality. Regarding the timber value on the Boykin-Wiggs Tract, Green opined that there was no need to discount the value of the timber due to the fact that some of the timber was located in an SMZ. Green explained that SMZs are completely voluntary and that no mandatory regulations restrict how landowners use their SMZ land. Green testified that although some landowners do not harvest timber located in the SMZ, many landowners do opt to harvest the timber in the SMZ. Green also testified that a variance in timber prices had occurred since the time he conducted his appraisal of the timber in January 2022.

¶12. At trial, Wiggs stated that he agreed with the method of partitioning the tracts and with McDougal's valuation of the land in his appraisal, but he did not agree with Green's valuation of the timber. Wiggs argued that the 40-acre SMZ on the Boykin-Wiggs Tract dramatically decreased the value of the timber on the land that Wiggs was to receive as a result of the partition. However, the transcript shows that Wiggs did not object to Green's testimony or offer any testimony or witnesses to contradict Green's valuation of the timber.

¶13. At the conclusion of the trial, the chancellor addressed Wiggs's argument that the SMZ affected the value of the timber on the Boykin-Wiggs Tract. The chancellor found that Green had thoroughly and adequately considered any effect the SMZ would have on the

---

[2] The Best Management Practices for Forestry in Mississippi Handbook (4th. ed. 2008) defines SMZs as "vegetated areas adjacent to streams and watercourses" that help protect stream water from pollution caused by timber harvesting.

timber value and addressed this consideration in his appraisal and report. The chancellor therefore held that he did not need to further consider any adjustments to Green's valuation of the timber. However, because Green testified that a variance in timber prices had occurred since his January 2022 appraisal, the chancellor ordered Green to update the timber prices on his existing appraisal and submit it to the court.

¶14.    On November 22, 2022, the chancellor entered an order granting partition of the real property. The order reflects that the parties agreed the fair method for partitioning the two tracts was by "swapping" Wiggs's one-third interest in the Boykin-Wiggs-Morlino Tract for Boykin's one-half interest in the Boykin-Wiggs Tract and then making equitable adjustments for any difference in value. The chancellor also ordered Green to submit his updated timber valuation to the court within twenty days.

¶15.    Green submitted the updated timber prices to the chancellor. The updated appraisal valued the timber on the Boykin-Wiggs Tract at $63,579.20 and the timber on the Boykin-Wiggs-Morlino Tract at $71,501.21.

¶16.    After receiving Green's updated timber appraisal, the chancellor entered an order on December 19, 2022, granting owelty as an equitable adjustment to Wiggs. To determine the equitable adjustment owed to Wiggs, the chancellor first calculated the value of each tract by adding together the values in the land appraisal performed by McDougal and the timber appraisal performed by Green. Next, the chancellor divided the total value of each tract by the number of owners to determine the amount of interest held by each party. The chancellor then calculated the difference in the value of Wiggs's one-third interest in the Boykin-Wiggs-

5

Morlino Tract from the value of his one-half interest in the Boykin-Wiggs Tract and reached a total difference of $2,160.80. The chancellor accordingly ordered Boykin to pay Wiggs owelty in the amount of $2,160.80 as an equitable adjustment for the partition of the two tracts.[3]

¶17. Wiggs filed a motion for a new trial, arguing that the chancellor erred in determining the amount of equitable adjustment owed to Wiggs. Wiggs asserted that the property he received contains a 40-acre SMZ, which "significantly impact[ed] his ability to realize the full value of the timber on his property." Wiggs also argued that the chancellor's ruling was "overwhelmingly against Mississippi and federal public policies because it de facto penalizes a landowner by depriving him of comparable land value simply because significant portions of his property contain SMZs." In support of his argument, Wiggs cited numerous online resources. The Appellees filed an opposing motion, as well as a motion for attorney's fees.

¶18. The chancellor entered an order denying Wiggs's motion for a new trial and the Appellees' motion for attorney's fees.[4] In his bench opinion, the chancellor acknowledged

---

[3] For the Boykin-Wiggs-Morlino Tract, the chancellor added together the value of the land appraisal ($192,500) and the value of the timber appraisal $71,501.21 for a total of $264,001.21. The chancellor then divided the total number by three, for a total of $88,000.40. For the Boykin-Wiggs Tract, the chancellor added together the value of the land appraisal ($108,100) and the value of the timber appraisal ($63,579.20) for a total of $171,679.20. The chancellor then divided $171,679.20 by two, for a total of $85,839.60. To determine the amount of equitable adjustment that the Appellees owed to Wiggs, the chancellor calculated Wiggs's one-third interest in the Boykin-Wiggs-Morlino Tract ($88,000.40) less his one-half interest in the Boykin-Wiggs Tract ($85,839.60), and reached a total difference $2,160.80.

[4] The Appellees filed an untimely cross-appeal challenging the chancellor's order denying attorney's fees. However, in their appellate brief, the Appellees state that they have abandoned their cross-appeal.

6

the numerous online resources Wiggs cited in his motion for a new trial. The chancellor found that these resources were available to Wiggs prior to trial, yet Wiggs failed to present them to the chancellor for consideration at trial. The chancellor held that as a result, he could not consider the resources. In support of his ruling, the chancellor cited *Pruitt v. Pruitt*, 144 So. 3d 1249, 1253 (¶11) (Miss. Ct. App. 2014), where this Court held that it was an abuse of discretion for a chancellor to consider evidence outside of the record when making a valuation.

¶19. The chancellor also found no merit to Wiggs's contention that the failure to consider the timber values in the SMZs was contrary to public policy. The chancellor explained that Wiggs's witness Green "testified clearly that it was not appropriate to discount the value of the [Boykin-Wiggs Tract] on account of timber lying in the SMZ because the SMZ program is entirely voluntary and had no force of law or regulation." The chancellor stated that he found Green's appraisal and his reasoning for the valuation of the timber to be proper. The chancellor further held that Wiggs failed to object to Green's testimony and or present any contradictory evidence despite having had the opportunity to do so.

¶20. Wiggs now appeals.

**STANDARD OF REVIEW**

¶21. "The standard of review for property partition cases is whether this Court finds manifest error in the decision of the chancellor, only then will this Court reverse the findings of the chancellor." *Lynn v. Lynn (In re Last Will & Testament of Lynn)*, 878 So. 2d 1052, 1055 (¶11) (Miss. Ct. App. 2004). We review questions of law de novo. *Sims v. Mathis*, 192

7

So. 3d 1109, 1111 (¶7) (Miss. Ct. App. 2016).

## DISCUSSION

### I.       Insufficient Deraignment of Title

¶22.    Wiggs first argues that the Appellees failed to comply with section 11-17-35's requirement that a deraignment must show "title out of the sovereign"—i.e., the United States of America.  Wiggs submits that because the Appellees failed to provide a legally sufficient deraignment of title as required by statute, the chancellor erred by partitioning the properties at issue.

¶23.    The record reflects that during the proceedings below, Wiggs never asserted any claim of error regarding the partitioning of the properties.  In fact, Wiggs expressly stated at trial that he agreed with the manner of partitioning the land.  "Issues raised for the first time on appeal are procedurally barred." *Pierce v. Pierce*, 132 So. 3d 553, 567 (¶37) (Miss. 2014). Because Wiggs failed to raise his claim that the chancellor erred in partitioning the properties and, instead, agreed with it in the proceedings below, we will not address it for the first time on appeal.

¶24.    Regarding Wiggs's claim of insufficient deraignment of title, the record shows that after the Appellees filed their complaint for the partition, Wiggs filed a motion for a more definite statement pursuant to Rule 12(e).  In the Rule 12(e) motion, Wiggs asserted that the Appellees failed to deraign the title to the properties as required by section 11-17-35.

¶25.    "Deraignment of title is an abstract of information from the public land records setting forth all possible parties in interest, precisely how their interest, or claim thereto, arises."

8

*Carpenter v. Haggard*, 538 So. 2d 776, 778 (Miss. 1989). Deraignment of title is governed by section 11-17-35 and states, in pertinent part, as follows:

> In bills to confirm title to real estate, and to cancel and remove clouds therefrom, the complainant must set forth in plain and concise language the deraignment of his title. If title has passed out of the sovereign more than seventy-five (75) years prior to the filing of the bill, then the deraignment shall be sufficient if it show title out of the sovereign and a deraignment of title for not less than sixty (60) years prior to the filing of the bill. A mere statement therein that complainant is the real owner of the land shall be insufficient, unless good and valid reason be given why he does not deraign his title.

¶26. Wiggs and the Appellees ultimately entered into an agreed order stating that the Appellees would file a first amended complaint for the partition containing deraignments of title pursuant to section 11-17-35. The parties eventually filed a first amended complaint for the partition that contained deraignments of title for more than one hundred years prior to the filing of the complaint. However, the deraignments did not show title out of the sovereign.

¶27. Wiggs filed an answer to the first amended complaint and admitted to the ownership and description of the property, as well as to the deraignments of title. However, Wiggs alleged that the deraignments were insufficient because they failed to show that title had passed from the United States, as required by section 11-17-35. Nevertheless, Wiggs did not file a Rule 12(e) motion in response to the Appellees' first amended complaint, nor did he raise the issue of insufficient deraignment of title at trial.

¶28. This Court has held that "failure to deraign title is not grounds for dismissal, but a party may file a Rule 12(e) motion to force the complainant" to deraign title. *White v. Usry*, 800 So. 2d 125, 129 (¶15) (Miss. Ct. App. 2001). However, if "no Rule 12(e) motion was ever filed to request that the [complainants] deraign their title[] . . . the lack of deraignment

9

[is] waived." *Crosswhite v. Golmon*, 939 So. 2d 831, 835 (¶13) (Miss. Ct. App. 2006); *White*, 800 So. 2d at 129 (¶¶15-16).

¶29. Our review of the record confirms that Wiggs moved for a more definite statement after the original complaint was filed, and the Appellees subsequently filed the first amended complaint. At no point after the Appellees filed their first amended complaint did Wiggs file another Rule 12(e) motion for a more definite statement. Because Wiggs failed to file a Rule 12(e) motion in response to the Appellees' first amended complaint, the challenge to the Appellees' alleged failure to provide sufficient deraignments is waived.

## II. Amount of Equitable Adjustment

¶30. Wiggs next argues that the chancellor erred in his determination of the amount of owelty owed to Wiggs as an equitable adjustment. In his appellate brief, Wiggs failed to cite any caselaw in support of his assertions on this issue. "This Court is not bound to address assertions of error where a party fails to cite caselaw in support of their argument." *In re Johnson*, 312 So. 3d 709, 712 (¶17) (Miss. 2021). Nevertheless, as we will discuss herein, we find that the chancellor's determination of the amount of owelty is supported by substantial credible evidence.

¶31. "We review a chancellor's decision for abuse of discretion[,]" and we "will affirm a chancellor's decision when it is supported by substantial credible evidence." *Id*. at 711 (¶9). Regarding witness testimony, "the chancellor is the finder of fact, and the assessment of witness credibility lies within his sole province." *Hornsby v. Hornsby*, 353 So. 3d 507, 513 (¶21) (Miss. Ct. App. 2022) (citation omitted). Accordingly, "[w]e give deference to a

chancellor's findings in regard to witness testimony[] because the chancellor is able to observe and personally evaluate the witnesses' testimony and the parties' behavior." *Id*. In cases like the one before us where "there is conflicting testimony, the chancellor, as the trier of fact, is the judge of the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation." *Id*. "This Court will not substitute its judgment for that of the chancellor even if this Court disagrees with the chancellor on the finding of fact and might arrive at a different conclusion." *Id*.

¶32. On appeal, Wiggs asserts that although Green, McDougal, and Morlino all testified that a "full timber harvest would be impeded due the prevalence of SMZs on Wiggs's tract[,]" the chancellor only considered Green's testimony in determining the amount of equitable adjustment owed to Wiggs. Wiggs submits that the chancellor should have given appropriate weight to all the testimony in determining the amount of owelty.

¶33. Wiggs specifically asserts that the chancellor failed to give appropriate consideration to McDougal's testimony "that the presence of streams on a property can cause difficulties with harvest—creating the need to 'build roads' and potentially 'fill dirt' in order to reach and remove timber located in close proximity to streams." However, our review of the transcript shows that this statement was made in response to questions about access to the Boykin-Wiggs Tract. McDougal testified that, currently, the Boykin-Wiggs Tract could only be accessed two different ways: through another property owned by Wiggs and through the Boykin-Wiggs-Morlino Tract. Wiggs's counsel asked McDougal whether this lack of access

11

devalued the property, and McDougal testified that he had accounted for the lack of access in his appraisal. Wiggs's counsel also asked McDougal, "And in addition to access, if you wanted to harvest the timber, would it be a problem harvesting timber with only access there at the creek?" McDougal responded, "Well, . . . timber crews are—they're well-versed in how to build roads. I don't think that . . . there would be some fill dirt involved, and I—you know, again, *you'd have to ask Mr. Green that question really*." (Emphasis added). Our review of the transcript reflects that McDougal did not provide any testimony or opinion regarding SMZs or timber values.

¶34. During trial, Morlino agreed with the assertion by Wiggs's counsel that "you really can't do a lot with an SMZ area . . . because you're trying to protect the water quality and all that good stuff[.]" Morlino opined that an SMZ should be "valued at zero" because the timber could not be harvested. However, Morlino clarified that he was not an expert in timber appraising.

¶35. Green was the only witness who provided any expert testimony as to timber value. He also provided the most extensive testimony regarding SMZs. Green testified that some of the timber on the Boykin-Wiggs Tract was located within the 40-acre SMZ. However, Green explained there was no need to discount the timber value on the tract due to the fact that some of the timber was located in a SMZ. Green explained that SMZs are completely voluntary and that there are no mandatory regulations restricting how landowners use their SMZ land; as a result, some landowners leave the SMZ areas during a timber harvest, but many landowners opt to harvest the timber in the SMZ.

12

¶36. During the trial, Wiggs's counsel argued that approximately $25,000 was the "fair" amount of owelty owed to Wiggs as an equitable adjustment. However, Wiggs failed to provide any evidence or expert testimony in support of this assertion. Wiggs admitted at trial that although he disagreed with Green's valuation of the timber, he was not going to call any additional expert witnesses to contradict Green's appraisal report and valuation. The record shows that Wiggs did not object to Green's testimony or to Green's timber appraisal and report being admitted into evidence. We reiterate the supreme court's guidance that "it is incumbent upon the parties, and not the chancellor, to prepare evidence touching on matters pertinent to the issues to be tried. Where a party fails to provide information, the chancellor is entitled to proceed on the best information available." *Irby v. Est. of Irby ex rel. Marshall*, 7 So. 3d 223, 235 (¶38) (Miss. 2009) (citation omitted).

¶37. After our review, we find that as the finder of fact and assessor of witness credibility, the chancellor was within his discretion to find Green's testimony regarding the effect of an SMZ on timber values more credible than the testimony of any other witness.

¶38. Additionally, we find that in his order granting equitable adjustment, the chancellor set forth the valuations and calculations he utilized in determining the amount of equitable adjustment. The chancellor stated that he relied upon McDougal's land appraisal report, as well as Green's testimony and updated appraisal report, in determining the amount. As stated, Green testified that there was no need to discount the timber value on the Boykin-Wiggs Tract due to the fact that some of the timber was located in the SMZ. The trial transcript also reflects Wiggs's counsel acknowledged that SMZs are voluntary and that a

13

landowner can harvest all the timber in an SMZ if he chooses. Accordingly, we find that the chancellor's award of owelty was supported by substantial credible evidence.

### III. Motion for a New Trial

¶39. Wiggs also appeals the chancellor's order denying his motion for a new trial. The record reflects that after the chancellor entered the order granting equitable adjustment, Wiggs filed a motion for a new trial pursuant to Mississippi Rule of Civil Procedure 59(a). To obtain relief on his Rule 59 motion, Wiggs was required to show "(1) an intervening change in controlling law, (2) availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Gossett v. Gossett*, 313 So. 3d 1063, 1073 (¶33) (Miss. Ct. App. 2021) (internal quotation marks omitted). We review a chancellor's denial of a Rule 59 motion for a new trial for an abuse of discretion. *Id*.

¶40. In his motion for a new trial, Wiggs cited the Best Management Practices for Forestry in Mississippi Handbook, which he also referenced at trial. Wiggs also cited approximately five additional online resources. Although Wiggs did not submit these additional online resources into evidence at trial, Wiggs did not argue that these resources were "new evidence" for purposes of his Rule 59 motion, nor did he argue that there had been "an intervening change in controlling law" or "the need to correct an error of law or to prevent manifest injustice."[5] *Id*. Rather, Wiggs argued that the chancellor "should have considered the prevalence and value of the timber in the SMZs of both properties, as well as Mississippi

<hr/>

[5] In his response to the Appellees' opposing motion, Wiggs stressed that his motion for a new trial is in fact "a motion for new trial pursuant to [Rule] 59."

14

and federal policies regarding the same." Wiggs also argued that the chancellor's ruling conflicts with Mississippi and federal public policies that strongly prioritize the conservation of SMZs.

¶41. In his motion for a new trial and in his appellate brief, Wiggs failed to cite any caselaw in support of his assertions that he was entitled to relief because the chancellor failed to consider Mississippi and federal public policies regarding SMZs when determining the amount of equitable adjustment. We are "not bound to address assertions of error where a party fails to cite caselaw in support of their argument." *In re Johnson*, 312 So. 3d at 712 (¶17). Nevertheless, we find that the chancellor did not abuse his discretion in denying Wiggs's motion for a new trial.

¶42. In denying Wiggs's motion, the chancellor explained that he declined to review the additional online resources submitted by Wiggs because the resources were "outside of the record of the hearing" and were "available to Wiggs prior to trial, but Wiggs did not present [them] to this court for consideration for whatever reason." As to Wiggs's argument that the chancellor should take judicial notice of the resources "because such information is commonly and widely known, as well as 'helpful and appropriate' for the considerations of the present case," the chancellor found that Wiggs could have asked the chancellor to take judicial notice of these resources at trial, but he failed to do so.

¶43. Additionally, the chancellor found no merit to Wiggs's argument that the failure to consider the timber values in the SMZs was contrary to public policy. The chancellor explained that Green "testified clearly that it was not appropriate to discount the value of the

15

[Boykin-Wiggs Tract] on account of timber lying in the SMZ because the SMZ program is entirely voluntary and had no force of law or regulation." The chancellor stated that he found Green's reasoning to be proper.

¶44. After our review, we find that Wiggs failed to show that he was entitled to relief pursuant to Rule 59. *Gossett*, 313 So. 3d at 1073 (¶33); *see also Miller v. Smith*, 229 So. 3d 148, 154-55 (¶28) (Miss. Ct. App. 2016). As a result, the chancellor did not abuse his discretion in denying Wiggs's motion for a new trial.

## CONCLUSION

¶45. After our review, we find that the chancellor did not err in partitioning the property at issue, nor did he err in his determination of the amount of owelty owed to Wiggs as an equitable adjustment. We also find that the chancellor did not abuse his discretion in denying Wiggs's motion for a new trial. We therefore affirm.

¶46. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

16